## WEBB v. KEY.
### No. 1068.

Court of Appeal of Louisiana. First Circuit.
Dec. 6, 1932.

Johnson & Kantrow and Taylor, Porter & Brooks, all of Baton Rouge, for appellants.

W. A. Benton, of Baton Rouge, for appellee.

LE BLANC, J.

Plaintiff' brings this suit against the defendant to recover the amount he had to pay for repairs to his automobile, which he alleges was damaged through the carelessness and negligence of the defendant in an intersectional collision in the city of Baton Rouge, on April 18, 1931. The claim is for $250, which amount is not disputed.

The collision occurred at Laurel and North Seventeenth streets; the former running east and west, and having the right of way over the latter, which runs north and south. Plaintiff's car, driven by his daughter, Miss Alice Webb, a minor at the time, now Mrs. Legendre, was on Laurel street moving from east to west. Defendant, driving his own car on North Seventeenth street, was traveling south. The right of way of Laurel street over North Seventeenth is conceded. Plaintiff's car is a Nash, and the defendant's a Hupmobile.

The particular act of negligence charged against the defendant, according to plaintiff's petition, consists in his having brought his car to a complete stop on reaching the intersection at Laurel street, and on immediately thereafter, and without warning, suddenly starting forward again and darting in front of plaintiff's car which had already reached the intersection on the right of way street, making it impossible for the driver to swerve to the left ahead of him and avoid running into him.

The defendant, after denying the negligence alleged in plaintiff's petition, avers that he brought his car to a full stop a few feet north of the crossing of the two streets on the north side, and after having carefully looked in all directions to see if there was any other traffic moving, and observing that it was safe for him to cross, proceeded in the intersection, and that, after he had traveled beyond the center thereof, plaintiff's daughter, who was coming on Laurel street at about forty miles per hour, and on her wrong side of the street, ran into his car, throwing it toward the southwest corner of the intersection and turning it over. He alleges further that as a result of the collision, which was caused by the fault and negligence of plaintiff's minor daughter, he sustained a fracture of three ribs, which caused him intense suffering and kept him from his work as a master plumber for a period of six weeks. He also avers that his car was damaged to the extent of $203.45. For his suffering and pain which he fixes at $1500, his loss of time from work which he values at $390, his doctor's bill of $28, and the automobile damage, the whole amounting to $2,121.45, he prays for judgment by way of reconvention against the plaintiff.

In a supplemental answer, the defendant averred that the New Amsterdam Casualty Company carried liability insurance on the plaintiff's automobile, and that under the law of this state he was entitled to a judgment against that company, as insurer, as well as against the plaintiff, in solido. He accordingly prayed for service on, and for such judgment against, the said insurer. An exception of no cause of action was filed to this supplemental petition and sustained by the court.

As a result of the trial on the merits between plaintiff and defendant, there was judgment against the plaintiff dismissing his suit and in favor of the defendant on his reconventional demand in the sum of $500.

An appeal was taken by both parties.

From the statements contained in brief of counsel for defendant, we take it that he has for the present abandoned his reconventional demand as against the New Amsterdam Casualty Company, and we will therefore not

consider it as a party in the litigation. We may also, at this time, state that we note that exceptions of vagueness and of no cause or right of action had been originally filed by the defendant, but as they are not discussed in brief by either side, they may also be treated as having been eliminated. All legal points involved therefore seem to have passed out of the case, and we are left with such issues only as the solution of which depends on a proper analysis of the facts.

Miss Webb, driver of the plaintiff's car, says that as she entered the intersection plaintiff, who had stopped in North Seventeenth street, right before entering the intersection, suddenly darted in front of her. On this important point, we quote her own testimony, which is as follows:

"Q. What did the Key car do then, if anything, as you crossed the intersection? A. He shoved his car into gear and darted right out in front of me. It bucked, clumsy like. I don't sup~ose he was used to driving very much, it jerked so much.

"Q. How far had you gotten into the intersection when the Key car started up? A. My car had gotten all the way into the intersection—my whole car."

On cross-examination, she in effect repeats the statement that she was all the.way inside the intersection when the Key car darted in front of her, and then, when asked to state how fast it was going at the moment, she answers, "Approximately twenty-five or thirty miles an hour." She testified that she was going only fifteen miles, not having had time to gain more speed after turning into Laurel street from the block east of North Seventeenth, which was North Eighteenth.

In connection with this part of Miss Webb's testimony, we might mention here that Laurel street is shown to be 29 feet wide at the point where it is intersected by North Seventeenth street, and the block from North Eighteenth, to North Seventeenth street on Laurel street is shown to be 360 feet long. Miss Webb places the point of impact, when her car struck the Key car, north of the manhole in the center of the intersection. That point, considering the entire width of Laurel street, would necessarily be but 14½ feet from the line of Laurel street, where North street enters into it from the north. Allowing a space of 2 or 3 feet from that line to the point where the Key car was stopped, the whole distance from where the car started to dart across the intersection therefore would be between 16 and 17 feet. It is hardly probable that an automobile, regardless of the make or model, could leave a point from a state of immobility and gain a speed of twenty-five miles an hour in a short distance of 17 feet. Miss Webb's testimony that besides, the car "bucked, clumsy like" when it started, makes it all the more im-

probable. It would seem more reasonable, on the other hand, that Miss Webb's car could easily have attained a greater speed than fifteen miles an hour within the distance of 360 feet that it had on Laurel street after having entered it, slowly as she says, from North Eighteenth street.

Miss Webb testifies further that she swerved to her left in an effort to avoid collision, and applied her brakes. It was too late, however, and she gave him a glancing lick in the rear of his car, on the back end of the left side running board, as we understand her. She says that the cars became tangled, and that his car dragged hers to the middle of the street, where it stopped. His car rolled on, turning over very easily as it struck the curb.

Miss Jean O'Rourke, eleven years old, who was in the Webb car, corroborates Miss Webb to the extent that her car entered the intersection first, and that the Key car came fast into the street, right in front of them.

A witness named Andrews testified for the plaintiff. He lives on North Seventeenth street, near the corner where the collision took place. He says that he was standing on Laurel street when he saw the two cars approaching the intersection. They both entered it at about the same time; the defendant having come to a stop before, however. When he first saw the Webb car it was coming westward on Laurel street, and was then about halfway in the block between North Eighteenth and North Seventeenth streets. He estimates that block, however, as being only 100 feet long, which, according to him, would have placed the Webb car at only 50 feet from the North Seventeenth street line at the time defendant had stopped his car. On redirect examination, which evidently took place after a recess of court, as he refers to a visit made by him to the locus of the accident since his cross-examination, he makes some changes in his statement with reference to the Webb car being in the center of the block when he saw it, giving as an explanation his misunderstanding of the questions that had been asked. But the questions were made very plain, as we read them, they were repeated, and he seemed to be given every opportunity to have explained himself thoroughly. Of course, because of the length of that block being 360 feet instead of 100 feet as he estimated, there would be a material difference in the location of the Webb car, as he saw it, at the time the Key car started into the intersection. Instead of it being only 50 feet away, it would have been nearly 180 feet from the intersection.

■ A proper appreciation of the relative positions of the two cars at this moment is most vital, as even though it be conceded that Miss Webb was on the right of way street, if it is shown that Mr. Key had entered the in-

tersection before her, in other words, had pre-empted the intersection, she had to yield her superior right to him and permit him to cross ahead of her. With all due respect to Miss Webb, it would seem that if she was halfway up the block between North Seventeenth and Eighteenth streets when Mr. Key started to move after having brought his car to a full stop right at the intersection, unless she was driving at a terrific rate of speed, he was bound to have started across the street before she reached the line of intersection.

■ The various distances and physical facts following the impact all tend to corroborate the testimony of Mr. Key. He indicates by a mark on a photograph of the intersecting streets, the exact point at which he stopped his car before going across. That mark places him, as we would judge and have already stated, perhaps two or three feet from the north line of Laurel street at the point where North Seventeenth enters it. He says that after stopping he looked down the street, meaning to the east, because he indicates on the photograph the place where he saw another car parked some eight feet from the corner on the north side of Laurel street. Evidently he says that this car obscured the Webb car from his vision, as he did not see it coming down the street. Feeling that it was safe for him to do so, he proceeded across the intersection, going about ten or twelve miles an hour, as it seems he had to, his car being in low gear, and when he reached a few feet beyond the manhole in the center of the intersection, the left rear end of his car was run into by the Webb car. The force of the impact pushed his car from its line of travel to the curb on the southwest corner of the intersection, turning it completely over. He himself had to be extricated from it. Mr. E. L. Jackson, a witness called by defendant, who was standing on Laurel street about thirty feet away, was first attracted by the noise of the crash. He immediately looked around and ran to the scene of the collision. He says that the Key car was lying on the neutral ground, on the banquette, on the south side of Laurel, and the Webb car was right behind it on the same side of the street. Mrs. Nora Beyer, another witness for defendant, who also ran immediately to the corner and saw the cars before they were moved, testifies that both were on the southwest corner of the intersection. Plaintiff would have it appear that the Key car dragged the other car after they became entangled, which accounts for their position on that side of the street when they came to a stop; but outside of Miss Webb's statement to that effect, and the rather indefinite testimony of Mr. Andrews, all of which is positively denied by the defendant, there is nothing else to show that that is what happened.

The afternoon of the accident, Mr. Key took measurements within the intersection of the two streets, and testified that these showed that Miss Webb had a clearance of twenty-three feet behind his car in which to pass in safety. Reducing this space by quite a number of feet would still have afforded her lots of room to clear his car. The fact that both cars were found on the southwest corner of the intersection immediately after the collision, and before their removal, gives support to Mr. Key's account as to how the accident happened, and that the impact was bound to have taken place on the south side of Laurel street.

Accepting it as a fact, which we have done, that Miss Webb was halfway in the block between North Eighteenth and Seventeenth streets at the time defendant had come to a stop and started into the intersection after looking east, and considering the force of the impact when her car struck his, and considering also the position of the two cars when they came to a stop after the impact, it is almost impossible to account for the accident in any other way than that this young lady must have been driving at an excessive and reckless rate of speed on the wrong side of the street. The district judge found that she was at fault, and, from our appreciation of the facts in the case, we are unable to say that he has fallen into manifest error.

■ The sum of $203.45 claimed by defendant for the damage caused to his automobile is admitted, so necessarily that will have to be allowed. He undoubtedly also suffered a fracture of two ribs which caused him considerable pain and suffering and disabled him for some time at least from performing any work, as estimated by Dr. R. C. Kemp, who treated him. The proof regarding his earning capacity as a plumber is not very satisfactory. He says that he made $10 a day, and later speaks of a time when he earned only $8. It is a matter of common knowledge that at the time he was injured all earnings in every trade were much lower than they were a year or so before. We believe an allowance of $100 for this item would fairly compensate him, especially as it is shown that he was not incapacitated for the whole period he claims. He proved the amount of $28 claimed for medical and other bills. This leaves only the claim for his pain and suffering from the fractured ribs, for which we have concluded to allow him to recover the sum of $300, which we believe averages in a general way the amounts allowed for injuries of this nature. The total we allow amounts to $631.45, which is $131.45 in excess of the amount awarded by the lower court. The judgment will therefore have to be amended accordingly.

For the foregoing reasons, it is therefore ordered that the judgment of the lower court be amended by increasing the amount thereof from the sum of $500 to the sum of $631.45, and that, as thus amended, it be affirmed.