## MONTGOMERY v. PEYRONNIN et al.

### No. 1152.

Court of Appeal of Louisiana. First Circuit.
June 30, 1933.

Johnson & Kantrow, of Baton Rouge, for appellant.

Laycock & Moyse, of Baton Rouge, for appellees.

Le BLANC, Judge.

Plaintiff appeals from a judgment in the district court which dismissed his suit at his costs. His main demand is for damages for personal injuries and permanent impairment resulting therefrom, alleged to have been sustained on account of the carelessness, recklessness, and negligence of the defendant Walter A. Peyronnin in operating his automobile over the intersection of Main and Church streets in the city of Baton Rouge, on the morning of October 31, 1932, and in running into him when he had almost cleared the same. In addition he seeks to recover for hospital and doctor's expenses incurred in the treatment of his injuries as well as for damage to his car. The total demand is for the sum of $18,251. He avers in his petition that the United States Fidelity & Guaranty Company, an insurance corporation doing business in this state, had executed its surety bond in favor of the defendant Peyronnin, being a contract of insurance in the sum of $10,000 whereby it had insured the latter against the payment of damages such as are here claimed and he asks that judgment be rendered against them both in solido.

The gist of the plaintiff's complaint is that he had entered the intersection first, in his Ford coach which he was driving west on Main street, and was occupying the same when defendant Peyronnin was still fifty feet away to the north on Church street driving south, and in spite of the advantage he possessed by virtue of having pre-empted the intersection, Peyronnin continued into the same and collided with the right rear end of his car after he was almost entirely across.

The defendants deny generally all the allegations of plaintiff's petition in which Peyronnin is charged with negligence and aver specifically that it was the plaintiff who did not observe the rights of Peyronnin who was on a right of way street, but heedlessly drove into the intersection in front of his car and that it was impossible for him to avert the collision. As an alternative, the defendants

pleaded the contributory negligence of the plaintiff as a bar to his recovery.

Church street runs directly north and south with traffic going south only. Main street runs directly east and west with traffic going both ways. By municipal ordinance, Church street is designated as a right of way street, and its superiority as such over Main street is not disputed. North of the intersection, Church street has a paved surface twenty-nine feet in width. From a point which we judge to be approximately thirty feet from the intersection it opens out fan-shape, to a width of forty-four feet and maintains that width practically across Main street. Main street itself, on both sides of, and through the intersection, is forty-two feet wide. Not that it is important, but in order to make our description complete, we might mention that almost in the center of the street there is an electric street car track with rails four feet eight and one-half inches apart.

St. Joseph's Catholic Church occupies the northeast corner of the intersection of the two streets. It faces Main street, and sits about sixty feet from the curb on the north side of the street. From the curb on the east side of Church street to the west edge of the sidewalk to the main entrance of the church is forty-one feet. The open space in front of the church and as far as the sidewalk on the east side of Church street is planted with palm trees and shrubbery. It is not to be understood, however, that it is anything like a "blind corner" as the preponderance of the evidence is to the effect that a sufficiently clear view can be had by the driver of an automobile in front of the church of another automobile one hundred feet distant on Church street.

Plaintiff states that he was driving west on the right-hand side of Main street and that when he was about thirty-five feet from the intersection of Church street, he looked to his right in an open space through the shrubbery and saw the Peyronnin car on Church street not less than one hundred feet distant from the intersection of that street with Main. He says that he was not going very fast, nor was the Peyronnin car. He saw this car all along as he approached, and was driving into the intersection. He had slowed down his speed to about fifteen miles as he entered the intersection, at which time, he says Peyronnin was back about fifty feet away on Church street. As he proceeded across Church street, and just as the front of his car was clearing the intersection, he says that all of a sudden it was struck on the extreme right rear, the blow forcing the back end over to the left and across Main street, and turning it over on its side. He says that he was in a daze and does not remember anything much after that. By far the greater part of his testimony was taken by deposition, and in answer to several cross-interrogatories he states that he did not stop on reaching the intersection having merely slackened his speed without shifting gears. The whole purport of his testimony is to show that he felt satisfied that he had ample time to get across the intersection before the Peyronnin car which was fifty feet away would have even entered it. It is evident that he relies almost exclusively on what he considered what his right of way over the other car by reason of his having pre-empted the intersection. Asked if he was aware that Church street had the right of way over Main street, he answers that "he never gave that a thought as he had entered this street first."

As a witness in his behalf, plaintiff called to the stand a young man named Cunningham who was a student at Louisiana State University. His testimony impresses us as being very fair. He was standing in Church street at the southwest corner of the intersection, about two feet from the curb. He was on the lookout for an automobile ride to the University. As he had to go south he doubtless, as he says, was looking north on Church street for a car going in the direction in which he was headed. He had a plain view of Church street to his north and could see a considerable distance to the northeast on Main street. He says that plaintiff entered the intersection first, a fact which seems to be well established by a preponderance of the evidence. He saw the Peyronnin car first when it was about half way along the side of the Catholic Church which would place it more than half way in the block north of Main street. Prior to that time he is not sure that he had looked northeast on Main street and therefore had not seen plaintiff's car. When he did see it for the first time, he says that it was within ten feet of the intersection on Main street, at which time the Peyronnin car was about twenty feet from the intersection on Church street. He testifies that both cars were going at approximately the same rate of speed which he estimates at between twenty and twenty-five miles per hour. Plaintiff did not stop as he reached the intersection and he does not recall hearing him blow any horn. Assuming what this witness says to be the true facts, as we believe he comes as near stating them as it is possible for one to do so, it becomes evident that the moment plaintiff entered the intersection on Main street, Peyronnin was only ten feet from the line where he was to enter it on Church street. With that situation before us arises the vital and important question in the case as we have to keep in mind also the fact that Church street is a one-way street and enjoys the right of way over Main.

█ In the case of Denham v. Taylor et al., 15 La. App. 545, 131 So. 614, 617, we quoted approvingly a rule stated in Blashfield's Cy-

clopedia of Automobile Law (1927) Vol. 1, p. 499, par. 25, as follows: "The priority of right of one driver imposes a corresponding duty on the driver having the inferior right of way to exercise a degree of care commensurate with the superior right of the other to observe the car of the other, its speed, position and operation, and to wait until it has passed before attempting to cross the intersection."

Now it can hardly be gainsaid, that if, as Cunningham says, at the moment plaintiff entered the intersection the Peyronnin car was only ten feet away and he nevertheless drove across Church street, he stands convicted by the testimony of his own witness of failure to have observed the duty which was imposed on him under the circumstances. He says that he saw the Peyronnin car the entire time during which he approached the intersection and that being so he was bound to have seen it so near when he reached it that it was the evident purpose of the driver to take advantage of the superior right he enjoyed by being on the right of way street. Plaintiff's plain duty was to stop and let the other car pass before attempting to cross the intersection. He not only did not stop, but says that he did not blow his horn and gave no thought to the fact that Church street had the right of way over the street he was on. His counsel argues in brief that if a man approaching a right of way street had to stop his car and wait until he sees no automobile traveling on that street, he would never get across. The argument is a bit exaggerated, to say the least, and certainly can have no convincing force in a case like this, where it appears that had the party in whose favor it is made stopped and waited but two seconds, the accident would not have occurred, for at the speed Peyronnin was driving, he would, in that short space of time, have góne entirely across Main street which is but forty-two feet wide. Far from being an imposition on automobile drivers, we believe the rule referred to is a very sensible and salutary one, the observance of which has averted many accidents at busy street intersections.

▮▮ Of course, we are not unmindful of the modification of the rule as applied in some instances, to the effect that even the driver on the right of way street must yield his advantage where the other driver reaches and enters the intersection first. But the latter driver only acquires the right of pre-empting the intersection, as it is often referred to, if, on approaching it and before entering, the car on the favored street is at a sufficient distance that he can reasonably expect to clear it without danger of a collision. Naturally no arbitrary figure can be set as establishing what that distance ought to be as it will vary according to the different circumstances which present themselves. In the case of Bethancourt v. Bayhi (La. App.) 141 So. 111, so strongly relied on by counsel for plaintiff in this case, it is shown that the car on the right of way street was "half a block away" when the driver on the less favored street attempted to cross the intersection. Our court, in the case of Webb v. Key, 144 So. 650, recognized the right of the driver on the inferior street to proceed across the intersection after he had pre-empted it, but in that case also it was found as a fact that the car on the favored street was nearly one hundred and eighty feet away at the time and was moreover going at a reckless rate of speed on the wrong side of the street. In this case, it is urged that the Peyronnin car which was on the right of way street was fifty feet away at the moment plaintiff, without stopping, proceeded across the intersection. This distance is plaintiff's own estimate, but, as already shown, when he came to have it substantiated we find that he overstated it by forty feet if we adopt his own witness' testimony. Now, whilst with a fifty-foot margin he might reasonably have expected to clear the intersection, we certainly do not believe that he should have hoped to do so in safety when the other car was only ten feet away. We adopt Cunningham's testimony on this point because in the first place he seems to be the only witness besides the two parties involved in the accident who saw it all happen, and in the second place, he impresses us as being an intelligent young man who could readily have appraised the entire situation and wants to be fair to all parties concerned. We do not wish to appear as discounting altogether the testimony of other witnesses for the plaintiff, but none of them except Mrs. J. H. Finnegan claims to have seen the accident and she seems to have been so confused in relating all that she saw that really her testimony is of very little value in solving the point we are now considering.

Mrs. Finnegan says, with the plaintiff, that he had almost cleared the intersection when his car was struck in the rear right end by the Peyronnin car. If that were so, it would be corroborative of plaintiff's testimony that as he entered the intersection from Main street, the Peyronnin car was still fifty feet north on Church street. Unfortunately for the plaintiff, however, his witness Cunningham contradicts him and states that his car was just about half way across the intersection when Peyronnin's car hit him in the rear. Another witness named McLean testifies to seeing the plaintiff's car in the air after the impact and would place it further across the intersection, but his testimony relates only to its position after it had come to a rest and not to the place in the intersection where it was struck. M. A. Curtis, witness for the defendants, had turned from Church street into Main street, going west, just ahead of Peyronnin. He heard the blow from the collision, looked through the rear view mir-

ror of his car, and saw plaintiff's car swerving on two wheels. He did not see the two cars collide, but noticed fresh dirt about the middle of the intersection, right where the two streets cross, which indicated to him that that was the spot where the impact took place. On this point, too, therefore, the evidence falls short of supporting the plaintiff's contention that he was nearly across the intersection when Peyronnin's car struck his.

A careful consideration of all the testimony leads us to the conclusion that when plaintiff entered this intersection, the Peyronnin car was not at such distance from it as to justify a reasonable belief on his part that Peyronnin had yielded the right of way to him. As a prudent and careful driver he ought to have made sure that he could clear the intersection entirely before the other car which was on the right of way street would have reached the center of it; otherwise, it was his plain duty to stop and wait until it had passed, before attempting to cross. His failure to have exercised a sufficient degree of care in both respects was in our opinion the cause of the accident. His suit was properly dismissed in the lower court and the judgment appealed from is affirmed.