## CAVIN v. CAMUS.

### No. 1526.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1935.

On Rehearing Dec. 31, 1935.

Fred G. Benton, of Baton Rouge, for appellant.

Jos. A. Loret, of Baton Rouge, for appellee.

ELLIOTT, Judge.

This is a suit for damages for necessary repairs to a truck resulting from a collision with an automobile at the point where Plank road, leading from the north into the city of Baton Rouge, is intersected by a street known as Weller avenue.

We observe that the demand is for the sum of $83.44. Defendant, however, after answering the plaintiff's petition, assumed the position of a plaintiff in reconvention, and asked for damages on his part to his car and for personal injuries, aggregating the sum of $559.07.

The lower court rendered judgment rejecting the plaintiff's demand and awarding the defendant damages in the sum of $259.07 on his . reconventional demand. From this judgment an appeal was taken by the plaintiff. The defendant answered the appeal asking for an increase in, the amount of the judgment to the sum prayed for by him.

██ There is no motion by either side asking this court to inquire into the jurisdiction of either demand. However, the demand of the plaintiff being for an amount below that with which we are vested with jurisdiction, we take judicial cognizance of the fact and have to give it our consideration.

Under the provisions of the Constitution, section 1, art. 7, "in all cases where there is an appeal from a judgment on a reconventional or other incidental demand, the appeal shall lie to the court having jurisdiction of the main demand. If there be no right of appeal on the main demand, the appeal shall lie to the court having jurisdiction of the reconventional demand." In the case of Culbertson v. Cousin, 167 La. 520, 119 So. 535, 537, which had gone to the Supreme Court on a writ from this court, 9 La.App. 198, 119 So. 548, the provision of the Constitution was, construed as follows: "But the Constitution, as appears from the foregoing quotation therefrom, seems to be clear to the effect that, where the main demand is for an unappealable amount and the reconventional demand is for an appealable amount, the right of appeal exists only on the reconventional demand. This means that the judgment on the main demand cannot be disturbed by the appellate court."

On this appeal, therefore, we are restricted to an inquiry into the correctness of the judgment on the reconventional demand, as the judgment on the main demand cannot be disturbed. To review the judgment on the reconventional demand, however, it is necessary that we discuss and consider all the evidence adduced in the case.

The Plank road is a well-known state highway leading from Baton Rouge to Clinton. Its course is north and south, or nearly so. Weller avenue is a well-known public road called a street. It runs east and west, or nearly so, and leads from the plant of the Standard Oil Company to the Plank road, forming a junction with that road opposite Rappollo's store, and terminates at the junction. Both roads are frequently used. Some of the witnesses asked about it thought that the traffic on Weller avenue was perhaps heavier than that on the Plank road. The evidence justifies the assertion that at the place of junction the traffic entering and coming out of Weller avenue is such that everybody driving there should be observant and exercise care.

Rappollo's store is situated on the eastern side of the Plank road and back from the road; just how far witnesses estimate differently. We take it that it is about 30 or 40 feet back from the cement pavement on the Plank road. The pavement on the Plank road is 18 feet wide, and there is a shoulder on each side which may be estimated at about 8 feet in width. The Plank road is straight at this place. The collision occurred about 12 o'clock noon on February 28, 1934. The weather was clear, and there were no obstructions to hinder or interfere with seeing up and down the road for perhaps a half mile or more. In this instance both parties were reasonably acquainted with traffic conditions at that place.

Cavin, driving on Weller avenue going east, upon coming to the junction stopped and looked up and down the Plank road. He saw the Camus car coming south, and estimated that it was distant at the time about 3 blocks, which his testimony subsequently indicated was about 900 feet. He testified that, supposing he had plenty of time to cross to the eastern side of the Plank road, he started up, and driving 10 or 12 miles an hour crossed the road and stopped his truck about two feet east of the pavement, opposite Rappollo's store; that he was struck by defendant's automobile after he had stopped; the blow being received about midway between the front and rear end of his truck. The evidence shows that the impact was of unusual force and violence. The Cavin truck and the Camus automobile were both small light vehicles; the impact was such, however, that the Cavin truck was knocked through the air a distance of 20 or more feet. The Camus automobile could not have struck such a blow unless it had been coming under full power and at great speed.

The testimony of Camus is that, coming south on the Plank road driving about 40 miles an hour, he saw the Cavin truck stopped on the western side of the road in Weller avenue junction; that at the time he saw it he was distant only about 150 or 175 feet; that he supposed that it had stopped to let him pass; that he therefore did not check his speed and kept going, but that Cavin, when he had gotten within about 40 or 50 feet, suddenly started up and started across the road in his immediate front, with him so close at hand that it was impossible to stop; that he did slow down, apply his brakes, and endeavor to miss Cavin by swerving to the extreme left-hand side of the road, trying in that way to miss him by cutting in and passing ahead of him, but was unable to do so, and struck him near the middle of the road. He says that he commenced to swerve as soon as he saw Cavin start across; that he was 40 or 50 feet distant when he commenced to swerve. Cavin is thoroughly contradicted on this subject. Disinterested testimony shows that plaintiff's truck, when struck, had crossed and stopped east of the cement on the Plank road. If plaintiff's truck was not actually stopped at the time, it was in the act of stopping, and the rear end of the truck was about 2 feet east of the pavement. Cavin's testimony that Camus, when by him first seen, was about 900 feet distant, stands alone; but he could have seen that distance up the road, and if he looked carefully there was nothing to prevent him seeing an automobile coming that far away. But supposing Camus only half as far away as Cavin took him to be, Camus could see Cavin as far as Cavin could see him. He could see Cavin as soon as he started across the road, and must be charged with having done so. The junction was a place which called for care as soon as he saw Cavin start. He saw the danger, and if he had been driving at a reasonable rate of speed, with his automobile reasonably well in hand and under control, he could have stopped, slowed down, or done whatever was necessary in order to avoid a collision. It would not have been unavoidable, except by the desperate chance and jeopardy of swerving forward across the road at excessive headlong speed in an effort to cut in ahead, and in that way miss Cavin already in and say half way across the highway in his front.

The evidence in the case leads us to the conclusion that Camus was driving at a reckless, immoderate, and unreasonably fast rate of speed on approaching this junction. The evidence shows that his automobile. skidded under its brakes obliquely from the western to the eastern side of the pavement, crossing the cement to the shoulder of the road. Measured from the place where the skidding commenced to the place of impact, the distance was 50 feet or more. Defendant's claim that he was driving at about 35 or 40 miles an hour as he approached is his own estimate; he admits that his speedometer was broken; consequently, the violence of the impact and the estimate of other. witnesses, not interested in the result of the suit, is the more reliable guide in estimating his speed.

Title 2 § 3, rule 13 of Act No. 21 of 1932, provides that the highway department may adopt certain rules for traffic at places of the kind we are considering; but the evidence does not indicate that any rule of the kind was adopted.

Under the same title, section 3, rule 11 Subsection (a), it is provided: "When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling in an unlawful, improper, reckless or dangerous rate of speed or manner shall forfeit any right-of-way which he might otherwise have hereunder."

Title 2 § 3, rule 4 (a), Act No. 21 of 1932, reads: "Except as herein provided and subject to the provisions of Rules 3 and 17, and subject to the special speed limits specified in this Act, it shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways and bridges of this State at other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing, and no person shall, under any circumstances or conditions, drive any vehicle upon the public roads, highways or bridges of this State, at such a speed as will endanger the life, limb or property of any other person; and, subject to the special provisions and limitations contained in this Act, the person so driving or operating, or causing to be driven or operated, a motor vehicle on such public roads, highways and bridges, shall be held and deemed to be prima facie at fault in and responsible for any accident

or damage proximately flowing therefrom or connected therewith, which presumption, however, may be rebutted and overcome by proper showing of the contrary."

Defendant cites us numerous cases, based on collisions at junctions and intersections, where the driver of an automobile on the inferior road had stopped upon reaching the junction or intersection, causing a party approaching on the main highway, and seeing him stopped there, to suppose that he was waiting for him to pass, and had then suddenly started up, after the other party had gotten so close that no act on his part could avoid a collision, and whom, by stopping, he had tacitly invited to come on; but the present case is not based on a situation of that kind. The evidence in the present case satisfies us that Cavin, after stopping, started up, entered into and was about half way across the Plank road, in full view of Camus, who was so far away at the time that he, Camus, was bound to have seen Cavin in the road ahead moving across, and in that way, already in the actual occupation of the road ahead of him, making it the duty of Camus, while he had ample time and opportunity to do so, to slow down and keep to his own side of the road. That was manifestly the thing to do and which any reasonable man would have done; but Camus came on recklessly at uncontrollable speed, in disregard of the situation plain to be seen.

The situation in the present case has resemblance in some respects to that which existed in Guinn v. Kemp, 18 La.App. 3, 136 So. 764; Webb v. Key (La.App.) 144 So. 650; Montgomery v. Peyronnin (La. App.) 149 So. 291; Waddell v. Langlois et al. (La.App.) 158 So. 665.

As to whether or not Cavin was at fault in starting up and driving across the road, we express no opinion. We are satisfied that Camus was at fault, inexcusably negligent and heedless due to the speed at which he was driving, and in not giving proper attention to the Cavin car, obviously crossing the road at such a distance ahead that all he had to do, to proceed in safety, was to slow down to a reasonable speed and keep to his own side of the road. We are satisfied that Camus is not entitled to recover, and that the judgment in reconvention in his favor is contrary to the law and the evidence therefore erroneous.

For these reasons, the judgment appealed from herein, to the extent that it is in favor of the defendant Alphonse E. Camus and against the plaintiff George W. Cavin in reconvention for $258.07, with legal interest thereon from June 30, 1934, until paid, is annulled, avoided, and set aside, and the demand of said Camus in reconvention is now refused and rejected.

It is further ordered that Alphonse E. Camus pay the cost in both courts.

### On Applications for Rehearing.

### PER CURIAM.

In this case it is ordered that our former opinion and decree herein be amended and corrected on the subject of costs as follows:

It is ordered that George W. Cavin, plaintiff-appellant, pay the costs of the main demand in the case. Our former opinion and decree in all other respects to remain as handed down.

As amended our original judgment is reinstated and made final, and both applications for rehearing are hereby refused.