## MESE v. SUMMERS et al.*

### No. 1650.

Court of Appeal of Louisiana. First Circuit.

Nov. 7, 1936.

*Rehearing denied Dec. 10, 1936.

Johnson & Kantrow, of Baton Rouge, for appellants.

J. O. Bouanchaud and Starring & Walsh, all of Baton Rouge, for appellee.

OTT, Judge.

The suit is against Vernon B. Summers, a taxicab driver, and his employer, the Baton Rouge Yellow Cab Company, Inc. for damages alleged to have been sustained by plaintiff in an intersectional collision on December 11, 1935, in the city of Baton Rouge between 6 and 7 o'clock p. m. The total amount of damage claimed is $3,-748.50, part of which is for damage to plaintiff's car and the remainder for personal injuries sustained by plaintiff and expenses incurred by him on account thereof.

The negligence charged to the cab driver is.·that he was driving west on Florida street in the city of Baton Rouge on the above date at a dangerous and excessive rate of speed, in excess of 45 miles per hour, when the visibility was poor on account of the rain and darkness; that plain-

tiff was driving his car on Fifth street in a northerly direction across Florida street on his right-hand side of Fifth street, and, before reaching Florida street, he brought his car almost to a stop, looked both ways, sounded his horn, and entered the intersection of Florida and Fifth streets in a slow and cautious manner and proceeded across Florida street; that, when his car had passed the center of the intersection, the car driven by the cab driver, coming from the east on Florida street at an excessive rate of speed, ran into the right front fender of plaintiff's car, near the northeast corner of the intersection, knocking his car some 150 feet west, and causing the damage claimed.

Defendants deny that the cab driver was guilty of any negligence, and, in the alternative, allege that the accident was caused by the negligence and carelessness of the plaintiff in driving across Florida street on Fifth street at an excessive rate of speed, in failing to observe and respect the cab driver's right of way on Florida street, and in failing to see the cab approaching the intersection, and in failing to stop his car. Defendant, the Yellow Cab Company, filed a reconventional demand for damage to the cab. Judgment was rendered in favor of plaintiff against both defendants, in solido, for $541.50, interest and cost. The defendants have appealed.

Florida street is a right of way street, running east and west, and is 35 feet wide from curb to curb at the intersection; Fifth street, crossing Florida at right angle, is 23.3 feet wide at this intersection. The speed limit on both of these streets, fixed by ordinance, is 15 miles per hour. Besides the drivers of the two cars involved in the wreck, there were only two other witnesses who saw the accident, one called by plaintiff and the other called by defendants.

Plaintiff testified that on approaching Florida street he slowed down his car to about 10 miles per hour and when he was within 20 to 25 feet of the intersection that he looked both ways on Florida street and saw some lights about a block east on Florida street coming toward the intersection; that he then proceeded north across Florida street about 11 miles per hour, and, when he had gotten over the old rails of the street car track on Florida street, the yellow cab, coming from the east at a rapid rate of speed, ran into the

right front fender of his car, knocking it some 150 feet west on Florida street.

Mr. Felps, a witness for plaintiff, testified that he was driving behind the plaintiff; that plaintiff slowed down to about 10 miles per hour on approaching the crossing, then started on across at about 15 miles per hour; that, as plaintiff entered the intersection, another car was coming toward the intersection about 150 to 200 feet east on Florida street; that, when plaintiff had about cleared the north track of the old street car line, the cab ran into the plaintiff's car and knocked it down Florida street to the west about 150 feet. He says the impact occurred to the north of the old street car track on Florida and somewhat to the right on Fifth street, and that the cab was coming at a rapid rate of speed.

Against this testimony we have that of the cab driver, who says that he was going west on Florida street about 23 miles per hour; that within 15 to 20 feet of the Fifth street crossing he slowed down to about 10 miles per hour, and saw a car to his left down Fifth street about 150 feet; that he entered the intersection when plaintiff's car was about 100 feet back of the intersection, and, when he had about crossed the center of the intersection, plaintiff's car, coming at a rapid rate of speed, turned to its left, and struck the cab just back of the driver's seat. The cab driver says that he entered the intersection first and did not know that the other car was coming so fast.

A colored boy, called by defendants, said that he stopped at the corner of the intersection to let the Mese car pass; that this car was going fast; that the cab came from the east on Florida driving pretty fast, too; that, when the cab was about across the street, the plaintiff's car hit the cab in the side. He says the yellow cab entered the intersection first.

■ We have no difficulty in reaching the conclusion, as did the trial judge, that the driver of the cab was guilty of negligence in driving at an excessive rate of speed up to and over the crossing. He says that he was going 23 miles per hour over a street where the speed limit is fixed at 15 miles per hour and at night while it was raining. Moreover, he was probably driving more than 23 miles per hour, as his own witness, the colored boy, says that he was driving "pretty fast," which can only be interpreted to mean that he was driving

faster than ordinary traffic drives. Furthermore, the evidence shows that the cab, after striking plaintiff's car, on being struck by it, went some 25 feet further and crashed into a telephone pole with considerable force. Taking the cab driver's statement as to where the impact occurred, his car continued on across Fifth street for some 12 or 15 feet, ran up on the banquette, and struck with considerable force a telephone post more than 12 feet from the intersection. It is hardly possible to believe that the cab was going no more than 23 miles per hour at the time of the impact.

■■ However, the evidence shows that the plaintiff was also guilty of negligence in at least two respects. Plaintiff testified that just before he entered the intersection he looked both ways and saw some lights coming about a block away. He admits that he did not look in that direction any more, as he did not see the cab until it hit him in the intersection. Here is what he says on this point:

"Q. You did not see the Yellow cab from the time you saw the lights a block away, if that was the Yellow cab, until it struck you? A. That is right.

"Q. And you were driving 11 miles per hour? A. Yes."

Although plaintiff was entering and crossing a right of way street, yet he admits that he did not see this yellow cab coming toward the intersection until he was struck north of the center. Obviously, he was not keeping a proper lookout. The driver of a car crossing a right of way street must exercise that degree of care commensurate with the superior right of the driver on the right of way street. This implies that the driver, when crossing a right of way street, must exercise care in observing the cars on the right of way street so as to determine their speed, position, and manner of operation. 2 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.) par. 1025, p. 187; Montgomery v. Peyronnin et al. (La. App.) 149 So. 291.

■ In the second place, plaintiff was guilty of negligence in failing to stop his car before colliding with the yellow cab on the right of way street. According to plaintiff's own testimony, he was driving across the intersection at only 11 miles per hour, and that, driving at that speed, he could stop his car within a car's length which is from 8 to 10 feet. According to his own testimony he had gone more than halfway across Florida street, say 20 feet, when he was struck. Manifestly, if he was traveling no faster than he claims he was, and if he could have stopped within 8 or 10 feet, there is no reason why he should not have stopped before the cab struck him, had he been keeping a proper lookout for oncoming traffic. O'Day v. Kapanica, 18 La.App. 634, 138 So. 472.

■ ■ It is not necessary to decide whether or not plaintiff was driving at an excessive rate of speed across the intersection; his negligence, in the two respects already discussed, is sufficient to bar his recovery. For, if the plaintiff is guilty of negligence which contributes to the accident, he cannot recover, even though the defendants may also be guilty of negligence. Belden v. Roberts, 3 La.App. 338.

We are reluctant to reverse the trial judge on a finding of fact; however, our appreciation of the evidence given by the plaintiff himself forces us to the conclusion that his own negligence contributed to the accident.

For the reasons assigned, it is ordered that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered that the suit of the plaintiff be dismissed, at his cost in both courts.