At about 8 o'clock on the morning of February 4, 1947, plaintiff herein, Fred Hair, was riding his motorcycle on Railroad Avenue in Lake Charles, going west. Occupying what is called a "buddy seat" with him was a young man by the name of Clarence Taylor. At the same time the defendant, Austin W. Lee, was driving his Plymouth two-door sedan automobile on Kirkman Street, traveling north. He was alone in his car.
At the intersection between these two streets there is an off-set, on the north side of Railroad Avenue where Kirkman street narrows about 12 feet from its width on the south side. In other words on the south side of Railroad Avenue, Kirkman Street is 35 feet wide and instead of projecting straight across Railroad Avenue, the west line on the north side of that avenue closes in approximately 12 feet narrowing the width on that side of Railroad Avenue to 23 feet. That means that a car traveling north on Kirkman street over the intersection has to travel several feet in a diagonal north-easterly direction in order to get across. Railroad Avenue is 30 feet in width.
As these two vehicles were crossing the intersection there was a collision between them and the plaintiff was thrown from his motorcycle sustaining comminuted fractures of the tibia of his right leg about half way between the knee and the ankle. The doctor experienced considerable difficulty in mending the fractures and finally had to resort to an operation. Hair has instituted this suit against the defendant Austin W. Lee and his liability insurance carrier, American Mutual Liability Insurance Company, to recover damages in the total sum of $9,828.45. These include $8,000 for pain, suffering and disability in the use of his leg; $1250 for loss of earnings during 25 weeks and all of the medical and hospital expenses incurred in treating his injury.
Both of these streets apparently are of equal importance as far as traffic running over them is concerned. However, as the city ordinance of the City of Lake Charles directs the traffic entering Railroad Avenue from Kirkman Street to come to a full stop before proceeding across the intersection, it would appear that to that *Page 544 
extent, Railroad Avenue has the advantage in the matter of a right-of-way. Besides, the ordinance also provides that traffic approaching an intersection from the right, where neither street is a right-of-way street, has the right-of-way over traffic approaching from the left. Thus, it may be said that plaintiff enjoyed those advantages over the defendant in approaching this intersection.
In his petition, he charges the defendant Lee with the following acts of negligence: (1) in failing to bring his automobile to a complete stop at the intersection, as required by the city ordinance; (2) in entering and proceeding across the intersection when he, plaintiff, was about to proceed across himself in the exercise of his legal right; (3) in failing to keep a proper look-out and in ascertaining whether he could enter the intersection with safety to himself and others traveling on the street; (4) in failing to keep his automobile under proper control, and (5) in proceeding across the intersection at an illegal and excessive rate of speed, in disregard of the right-of-way, which he, plaintiff, had, thereby rendering the collision inevitable. The defendants filed a joint answer in which they deny practically all the allegations of the plaintiff's petition and urge that the defendant Lee had preempted the intersection and thereby gained an advantage over the plaintiff and that he had already reached a point past the center of Railroad Avenue when his car was struck and damaged by the motorcycle as it was being driven by the plaintiff at an excessive and illegal rate of speed. It is averred that the sole and proximate cause of the accident was the negligence of the plaintiff himself, who, as already stated, was running at an excessive speed and did not have his motorcycle under proper control. Further they charge him with failure to reduce his speed before entering the intersection and in not not keeping a proper look-out. They lastly charge him with negligence in operating a motorcycle with only one seat with two individuals riding thereon. By way of reconvention the defendant Lee then sets out the damage to his automobile amounting to the sum of $42.50 and prays for judgment in reconvention against the plaintiff.
After trial in the court below there was judgment in favor of the defendant rejecting the plaintiff's demand and also in favor of the plaintiff rejecting the defendant's reconventional demand. Plaintiff alone has appealed and therefore the reconventional demand has passed out of consideration. The trial judge has filed a written opinion in the record in which the testimony is carefully analyzed and in which he gives very good reasons for holding both drivers negligent. After a careful reading of the testimony in the case we are satisfied that there has been no manifest error pointed out by the plaintiff in the decision rendered.
An abundance of authorities is cited by counsel for both sides but after all the only law involved in the case is that with respect to the duty imposed upon drivers of motor vehicles in approaching and entering intersections, especially on busy city streets such as we are concerned with in this case. The law on this point is plain and when we come to decide cases of this kind our task is simply to apply it after having determined what are the facts as they appear from the record.
The law is that a man approaching an intersection on a right-of-way street has the right to assume that traffic approaching it from the inferior street will recognize his advantage and yield the right-of-way to him. On the other hand it is also the law that the party on the inferior street who enters the intersection first, or ahead of the car on the right-of-way street, pre-empts the right-of-way and gains the advantage over the driver on the right-of-way street who must yield his right accordingly. The issue of fact in this case therefore is, had the defendant Lee gained that advantage over the plaintiff and did his advantage in that manner impose a greater duty on the part of the plaintiff in approaching and entering the intersection.
The trial judge held, as a fact, and there can hardly be any dispute about it, that the Plymouth automobile had already reached a point beyond the center of the intersection *Page 545 
when it was struck by the motorcycle at the point where the rear fender joins the running board on the right hand side. The point of impact on the street was about one or two feet east of the center line in the northeast quadrant of the intersection. That indicates that the greater portion of the car, in fact more than half of it, had crossed the center line of the intersection at the time of the collision. In as much as there is an offset in the intersection the Lee car had to travel northeast in a diagonal direction, to reach the point where the impact took place.
Therefore, in considering the matter from the standpoint of the number of feet each vehicle traveled after entering the intersection, we find that the Plymouth car had covered the distance of that diagonal line which is bound to be more than 15 feet since half the width of Railroad Avenue is 15 feet, and besides, it had covered a distance of more than half its own length across the center of the intersection. We believe that 8 feet is an accurate estimate of this last distance and that 16 feet is very near the distance covered by the diagonal line to the center of the intersection. We think therefore that it can conservatively be stated that the Plymouth car had traveled 24 feet in the intersection when it was hit by the motorcycle. The motorcycle, on the other hand, had only traveled some 6 or 7 feet in the intersection from the direction in which it had entered, when it struck the automobile. This distance is arrived at by taking 11 1/2 feet, one-half the width of Kirkman Street on the north side of Railroad Avenue, and deducting therefrom the width of the Plymouth car, say between 4 and 5 feet. It is evident therefore that the defendant had entered the intersection first unless it be that he was going at a greater rate of speed than plaintiff, and this, the evidence does not bear out.
Nevertheless, relying on plaintiff's testimony that he was no more than 10 feet away from the intersection when the Plymouth car was entering it, his counsel earnestly contend that he was near enough to the intersection to assume that the driver of the Plymouth car would yield him his right of way regardless as to whether he had entered first or not. This, as urged by counsel, would bring the case within the ruling made by this court in Montgomery v. Peyronnin, La. App., 149 So. 291. However, plaintiff's testimony on this point is not supported by that of his own witness, Miss Nona Dealey. This young lady was on the south side of Railroad Avenue, several feet west of Kirkman Street, and saw the accident. She testified that neither the car nor the motorcycle was going fast and she says that the driver of the car slowed down as he entered the intersection. He did not stop, she states, but "slowed down — like so many other people do." She then says that as he entered the intersection, the motorcycle was at a point which she marked on a sketch introduced in the record as evidence, and according to the scale of the sketch, that point is some 50 to 55 feet distant from the east line of Kirkman Street on the north side of Railroad Avenue. Counsel for plaintiff insist that this was not Miss Dealey's actual testimony but was something drawn out by suggestion of counsel for defendant on cross-examination. It is true that this young lady hesitated in stating actual measurements but we do not think that counsel is justified in intimating that she was unduly influenced in any manner in locating that point on the sketch any more than she was in indicating any of the other points she marked thereon. We are satisfied that that is her testimony with regard to the distance the motorcycle was from the intersection when the Plymouth car was entering it.
That being so, the case is different from Montgomery v. Peyronnin, supra, and it is our appreciation of the law on the subject, that plaintiff, from the distance he was, should have kept his motorcycle under such control as to let the defendant cross over the intersection under the right-of-way which he had pre-empted. See Hutto et al. v. Arbour et al., La. App.,4 So.2d 84; Wilson v. New Amsterdam Casualty Co., La. App., 180 So. 870.
We conclude therefore that the trial judge was correct in holding that the defendant Lee had entered the intersection *Page 546 
at a sufficient time ahead of the motorcycle to have obtained the advantage of preemption and that the plaintiff was contributorily negligent in not yielding that advantage to him. He was also correct in holding that the motorcycle must have been going faster than the car as it is shown that it skidded some 15 feet before the collision, and even so struck the automobile with considerable force. The slower speed of the car is indicated by the fact that it did not travel to any extent after the collision. The front wheels ran up the incline towards the railroad tracks, on the north side of Railroad Avenue but that was a very short distance; certainly not enough to denote excessive speed.
It is strenuously urged by counsel for plaintiff that even though the defendant Lee had pre-empted the intersection, he lost this advantage by his failure to come to a complete stop before entering the intersection. Whilst it is true that his failure in this regard, and in violation of the City ordinance, has to be considered as one of the factors in determining his negligence, we must bear in mind that what we are concerned with solely on this appeal, is the contributory negligence of the plaintiff on which the failure of the driver Lee to have brought his car to a complete stop, as required by the ordinance, hasn't any material bearing. It was the plaintiff's negligence in continuing into the intersection after Lee had pre-empted it and indicated that he was going to go across, that brought about the collision. In this respect the judge was correct in applying the rule as laid down in the case of Isaac v. Frederick, La. App., 5 So.2d 176. As stated in that case, that was more or less a technical violation of the ordinance and was not a direct or producing cause of the accident. One of the causes in this case was, as stated already, the plaintiff's failure to yield to the defendant Lee's car, its right of pre-emption which it had already acquired. This constituted negligence on his part and bars his recovery as decreed in the judgment appealed from.
Judgment affirmed at the costs of appellant.