23CA1389 Peo v Bishop 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1389
El Paso County District Court No. 22CR2760
Honorable Catherine Mitchell Helton, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Osiah Lauren-Miguel Bishop,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Osiah Lauren-Miguel Bishop, caused a five-vehicle accident by speeding and weaving between lanes on a busy Colorado Springs road.  A jury found him guilty of vehicular assault, reckless driving, and multiple counts of reckless endangerment.

¶ 2    On appeal, Bishop contends that the trial court erred by admitting evidence concerning his car's modifications and appearance and alleged victim impact evidence.  We affirm.

## I.    Evidentiary Issues

¶ 3    Bishop argues that the court committed reversible error by admitting (1) expert testimony about the modifications he had made to the car; (2) photographs of the car's interior showing stickers obstructing the speedometer and rearview mirror; and (3) testimony from the wife of a victim describing the victim's injuries.

### A.    Standard of Review

¶ 4    We review a trial court's evidentiary rulings for an abuse of discretion.  *People v. Grosko*, 2021 COA 28, ¶ 36.  A court abuses its discretion if its decision is arbitrary, unreasonable, or unfair or is based on a misapplication of the law.  *People v. Quillen*, 2023 COA 22M, ¶ 14.

¶ 5     When a claim of error is preserved, we apply a harmless error standard to determine whether reversal is warranted. *People v. Ambrose*, 2021 COA 62, ¶ 53. Under this standard, an erroneous evidentiary ruling does not require reversal unless the ruling substantially influenced the verdict or impaired the fairness of the trial. *Nicholls v. People*, 2017 CO 71, ¶ 17.

### B.     Expert Testimony Regarding the Car's Modifications

¶ 6     Over Bishop's objection, the trial court allowed an expert to testify that "heavy modifications" had been made to Bishop's car. He explained that alterations to the suspension components lowered the car's center of gravity, allowing it to accelerate more quickly and "weave in and out of" traffic more easily.

¶ 7     On appeal, Bishop argues that the expert's testimony amounted to "other acts" evidence that "suggest[ed] bad character" and was therefore inadmissible under CRE 404(b).

¶ 8     We need not determine whether the court erred because, even assuming the evidence should have been excluded, any error was surely harmless.

¶ 9     First, other unchallenged testimony established that Bishop's car had been modified. *See, e.g., People v. Russell*, 2014 COA 21M,

2

¶ 27 ("Whe[n] evidence is merely cumulative . . . any error in its admission is harmless."), *aff'd*, 2017 CO 3.  One eyewitness to the crash described the car as "highly customized" and "heavily modified," opining that it "looked more like a track car than a regular street legal car."  Another witness said that the car was a "souped-up racer style import vehicle."  Two witnesses called the car a "rice burner," which one defined as a "car that makes a lot of noise" because the muffler has been removed.  And an officer testified that when she contacted Bishop at the scene, he told her that he had "put a lot of work into his car."  Photographs admitted into evidence showed that Bishop's car did not have a hood, and the bumper and wheels were substantially modified.

¶ 10    Second, the evidence of guilt was overwhelming.  *See Pettigrew v. People*, 2022 CO 2, ¶¶ 56-57 (constitutional error in admitting evidence was harmless beyond a reasonable doubt when the evidence of guilt was overwhelming, and the inadmissible evidence was cumulative of properly admitted evidence).

¶ 11    The crash occurred on westbound Woodmen Road at the intersection with Tutt Boulevard, where the road splits into five lanes: two southbound left-turn lanes, two lanes that continue

3

west, and one right-turn lane.  The posted speed limit is forty-five miles per hour.

¶ 12     Four eyewitness drivers, not involved in the crash, testified at trial.  They said that Bishop was driving "erratic[ally]" at around eighty miles per hour through "very heavy" traffic on Woodmen Road.  Two witnesses saw Bishop drive off the road onto the right-side dirt shoulder to pass a car, then swerve left "to the extreme opposite side of the street," "cut[ting] other traffic off" as he maneuvered across the lanes.  One of those drivers had to "slam on [her] brakes" to avoid a collision.  Another driver recounted that Bishop continued to speed as he approached the intersection, weaving "in and out of cars" and going "at least 50 [miles per hour] [while] all these cars . . . were stop[ped]" at the traffic light.  That driver thought Bishop was "intoxicated for sure."  One witness said he felt "threatened" by Bishop's driving and told his passenger that they should call the police because "the guy might kill someone."  The driver who slammed on her brakes thought the same thing — that "someone [was] going to die, possibly [her]."

¶ 13     As Bishop arrived at the intersection, he darted into a left-turn lane and then "suddenly" swerved right to "come back into traffic"

4

to "try and run th[e] red light" directing the westbound lanes. Bishop's car hit two vehicles; those vehicles struck two others. The crash scene investigator testified that Bishop started "the chain reaction" of collisions and was "the cause of . . . th[e] crash." When he was asked at the scene "what he was thinking," Bishop told witnesses that he "like[d] to drive fast."

¶ 14 On appeal, Bishop argues that, notwithstanding this avalanche of evidence, the expert's testimony was not harmless because it "undermined his main defense" — that he was "trying to avoid a truck." At trial, two officers testified that just after the crash, Bishop told them that a truck had "repeatedly cut him off," and he was trying to avoid it when the crash occurred. According to Bishop, if the jury had believed his allegation about the truck, it might have found that he did not have the requisite mens rea for reckless driving (a predicate for all the charges) — a "wanton or a willful disregard for the safety of persons or property." § 42-4-1401(1), C.R.S. 2025. But, he says, the expert's testimony suggested that he was speeding "for fun," not to avoid the truck.

¶ 15 For several reasons, we are not persuaded. As the prosecution pointed out at trial, regardless of whether the truck existed,

Bishop's conduct in exceeding the speed limit, cutting off other drivers, and weaving in and out of traffic demonstrated a willful disregard for other drivers' safety.

¶ 16    Also, there was no evidence to support the truck defense. No one saw the truck at the scene, and a witness who was behind Bishop through several intersections testified that Bishop was "absolutely not" "being cut off by another driver." Likely for this reason, Bishop's lawyer did not press the defense. She did not mention the truck in her opening statement, and she referenced it only in passing during her closing argument. She certainly never argued that Bishop's need to avoid the truck negated the mens rea necessary for reckless driving.

¶ 17    Finally, we do not see how the testimony could have prejudiced Bishop by suggesting that he was "speeding for fun" when Bishop told bystanders who questioned his driving that he "likes to drive fast."

¶ 18    Given all this, we are confident that the expert's testimony did not substantially influence the verdict.

## C.   Photographs of the Car's Interior

¶ 19    An officer testified that at the time of the crash, Bishop had stickers partially obstructing the speedometer and the rearview mirror.  The officer said that the stickers represented "a choice" to "take away" the functionality of these components.  The prosecution introduced two photographs of the car's interior that showed the stickers.

¶ 20    Bishop contends that the photographs were irrelevant because there was no evidence that a lack of visibility contributed to the crash and prejudicial because the stickers were offensive or associated with racing.

¶ 21    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  Thus, the evidence of obstructing stickers was relevant if it had any tendency to show that, at the time of the crash, Bishop demonstrated a "disregard of safety in driving." *People v. Chapman*, 557 P.2d 1211, 1213 (Colo. 1977).

¶ 22    The jury could infer from the stickers that Bishop was unconcerned about monitoring his speed (though speeding is a

violation of the law, *see* § 42-4-1101(2)(h), C.R.S. 2025) or ensuring visibility through his rearview mirror (though rear visibility is required by law, *see* § 42-4-226(1), C.R.S. 2025) — in other words, that he consciously disregarded certain safety measures. And because Bishop told the officer that he was potentially driving fifty-five miles per hour, the obstruction on the speedometer also went to his credibility. *See Cavin v. Camus*, 164 So. 645, 647 (La. Ct. App. 1935) (because the defendant had a broken speedometer, his own estimate of his speed was less reliable than other evidence).

¶ 23    As for Bishop's argument that the stickers' content was unduly prejudicial (an argument that does not appear to have been specifically raised in the trial court), we disagree. Neither the officer nor the prosecutor mentioned the content of any of the interior stickers; the officer's focus was the stickers' placement in the car. The jury would not have been unduly swayed by the "Crown Royal" logo, as the evidence established that Bishop was not intoxicated at the time, and, in this day and age, we think it highly unlikely that the jury would find a middle finger sticker or the word "shitbox" so offensive that it would decide the case on an improper basis. *See People v. Clark*, 2015 COA 44, ¶ 18 (explaining that evidence is

unfairly prejudicial if it would lead the jury to decide a case based on "sympathy, hatred, contempt, retribution, or horror" (citation omitted)).  Any prejudice from the "Volkswagen Racing" sticker affixed to the rearview mirror did not outweigh its probative value, *see People v. Vanderpauye*, 2023 CO 42, ¶ 59 (when considering the balancing required under CRE 403, the evidence should be given its maximal probative weight and its minimal prejudicial effect), and, in any event, it was no more prejudicial than the large sticker visible on the exterior of the car that said "MOVE OVER!" to which Bishop did not object.

¶ 24     To the extent Bishop argues that one of the photographs shows the speedometer "stuck somewhere above eighty miles per hour" (an argument indisputably raised for the first time on appeal), we discern no plain error.  *See People v. Tallent*, 2021 CO 68, ¶ 12 (plain error, rather than harmless error, review applies when a party fails to "make an objection 'specific enough to draw the trial court's attention to the asserted error'" (citation omitted)).  To be plain, an error must, at a minimum, be obvious to the trial court. *Id.* at ¶ 20.  Because the photograph is dark and a sticker obstructs the speedometer, it is not even obvious where the needle is pointing,

so we cannot say that the court "should have intervened sua sponte." *People v. Ujaama*, 2012 COA 36, ¶ 42 (citation omitted).

### D.  Testimony of Victim's Wife

¶ 25  Ed Kovitz, whose car was hit during the crash, suffered a traumatic brain injury.  As a result, he had almost no memory of the incident.  Over Bishop's objection, the court allowed the prosecution to call Kovitz's wife to testify about the events leading up to the crash and the injuries Kovitz sustained.

¶ 26  In response to the prosecutor's initial request that she "introduce [her]self to the jury," the wife mentioned that she "was working for a title company before the accident" but "had to quit." Then she testified that Kovitz left the evening of the accident to go to a sleep study; he was driving his brother-in-law's car, a white Ford Focus; he did not have any preexisting injuries; the next time she saw him was at the hospital "in a coma . . . fighting for his life"; and he did not "come home" until "months later."

¶ 27  Bishop contends that the wife's testimony should have been excluded because it constituted victim impact evidence and was irrelevant and cumulative.

¶ 28    The wife's testimony was not victim impact evidence. "Victim impact evidence is evidence that relates to 'the victim's personal characteristics and to the physical, emotional, or social impact of a crime on its victim and the victim's family.'" *People v. Ray*, 2025 CO 42M, ¶ 118 (quoting *People v. Martinez*, 2020 COA 141, ¶ 29). The wife's testimony recounted certain events that occurred on the day of and shortly after the crash. *See id.* at ¶ 121 (witness testimony describing events surrounding a shooting rather than the impact of the shooting on him or his family was not victim impact evidence). And Bishop acknowledges that the wife's testimony about quitting her job was not actually elicited by the prosecutor, nor did it draw an objection.

¶ 29    The evidence was also not irrelevant. The wife's testimony confirmed that Kovitz was in the white Ford Focus that was hit by another car at the scene of the accident and that his injuries arose from the accident and not some unrelated event or condition. *See Clark*, ¶ 17 ("In criminal cases, evidence is relevant if the evidence makes it more or less probable that a criminal act occurred . . . .").

¶ 30    True, some of the wife's testimony was cumulative of testimony from Kovitz and a doctor, but "[t]he fact that evidence is

11

cumulative does not, by itself, render the evidence inadmissible."
*People v. Morrison*, 985 P.2d 1, 6 (Colo. App. 1999), *aff'd*, 19 P.3d
668 (Colo. 2000). A court abuses its discretion by admitting
cumulative evidence only if that decision is "manifestly arbitrary,
unreasonable, or unfair under the circumstances." *People v.
Thompson*, 2017 COA 56, ¶ 184 (citation omitted); *see also People v.
Warner*, 251 P.3d 556, 564 (Colo. App. 2010) ("Admission of
cumulative evidence is a matter within the sound discretion of the
trial court.").

¶ 31 We see nothing manifestly unreasonable or unfair about the
court's decision to permit the wife's brief, relevant testimony, even if
it overlapped in some respects with that of other witnesses. The
fact that the wife became emotional for a moment while describing
Kovitz's injuries did not render the testimony unfairly prejudicial.
*Cf. People v. Thatcher*, 638 P.2d 760, 769 (Colo. 1981) (emotional
displays by the victim's husband during closing argument did not
require mistrial).

## II. Cumulative Error

¶ 32 Under the cumulative error doctrine, "numerous formal
irregularities, each of which in itself might be deemed harmless,

may in the aggregate show the absence of a fair trial, in which event a reversal would be required." *Oaks v. People*, 371 P.2d 443, 446 (Colo. 1962).

¶ 33　Bishop is not entitled to reversal based on cumulative error. "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d]" the defendant's substantial rights. *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Here, we have assumed a single, harmless error. Therefore, reversal is not warranted. *See People v. Thames*, 2019 COA 124, ¶ 69 ("[A] single error is insufficient to reverse under the cumulative error standard.").

III.　Disposition

¶ 34　The judgment is affirmed.

JUDGE DUNN and JUDGE MOULTRIE concur.