## WILSON v. NEW AMSTERDAM CASUALTY CO. et al.

### No. 1829.

Court of Appeal of Louisiana. First Circuit.

May 5, 1938.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

Laycock & Moyse, of Baton Rouge, for appellee.

LeBLANC, Judge.

This is a suit for damages arising out of an intersectional collision between a Chevrolet truck and a Ford sedan automobile which took place in the suburb of Baton Rouge known as Fairfields, on the morning of March 2, 1936. The truck

was being driven by one Louis Calabreece, made defendant herein together with the New Amsterdam Casualty Company which carried public liability insurance on the same. It was traveling south on Plank road. The automobile was being driven by the plaintiff, Archibald Wilson, and was going west on Madison avenue. This avenue does not continue under that name west of its intersection with Plank road, but is then known as Mohawk street. In other words, Mohawk street is a continuation of Madison avenue, directly west of Plank road. It is in the intersection formed by the junction of these three streets that the accident occurred. It might here be mentioned that Plank road is concededly a right of way street over the others.

The plaintiff, a man 60 years old, and a carpenter by trade, sustained personal injuries which he claims totally incapacitated him from doing any work for 5 months, and has permanently disabled him to the extent of 33⅓ per cent., and caused him to suffer severe pain, both physical and mental. He seeks to recover substantial damages against both defendants in solido. For the period of incapacity, he claims $533, for permanent disability, the sum of $3,500, for pain and suffering which he endured, $3,000, and for future pain and suffering, $500. In addition he claims $116 for doctor's and medical expenses, $45 for the loss of personal belongings, and $85 for damages to his automobile. These total the sum of $7,779, although the prayer of his petition is for judgment in the sum of $7,734.

Plaintiff charges the driver of the truck with negligence in the following respects: That, in violation of the city ordinance which fixes the rate of speed at 15 miles per hour, he was driving the truck at an excessive and lawless rate, which must have been between 45 and 55 miles per hour; that, although he was on the favored street, he disregarded the right which he (plaintiff) had acquired by having preempted the intersection, sounding no horn or giving any other signal of his approach; and that either he failed to watch ahead of him or, if he did, failed to take precautions to stop his car or to pull it to the left, which he could easily have done in order to avoid the collision. He alleges that he was free from any negligence whatever, but pleads, in the alternative, that should it be found that he was guil-

ty of contributory negligence, the defendants should still be held responsible for the accident and his injuries as the driver of the truck had the last clear chance of avoiding it and he had no such opportunity.

The defendants filed a joint answer in which it is admitted that there was a collision at the intersection mentioned and that the plaintiff sustained certain injuries as a result of the accident, but they deny any negligence on the part of the driver of the Chevrolet truck and aver on the contrary that the plaintiff was grossly negligent when, on reaching the intersection at approximately the same time as the truck, which was on the favored street, he failed to recognize its superior right and heedlessly drove into the intersection at a rate of speed in excess of 15 miles per hour as fixed by the city ordinance, immediately in the path of the truck, without making any effort to avert the impending collision. In the alternative they plead that, if it should be held that the truck driver was negligent, the plaintiff's contributory negligence bars his recovery, and, as a further alternative, they also plead the doctrine of the last clear chance against plaintiff.

On trial of the case on the merits there was judgment in the lower court in favor of the plaintiff and against the defendants, in solido, in the sum of $4,279, whereupon they both appealed.

Plaintiff lived on Madison avenue in the block which adjoins Plank road on the east, in the third house from the northeast corner of the intersection. On the morning of the accident, he was leaving in his car, as was his custom, at about 5.45 o'clock in the morning to go to his work. He backed out of his driveway into Madison avenue and proceeded west toward the intersection of Plank road. His testimony is to the effect that he was driving slowly, between 10 and 15 miles an hour, and that he first noticed the Chevrolet truck coming from the north on Plank road when he was passing by the vacant lot on the northeast corner of the intersection. It was not yet daylight and both the truck and his car had their headlights burning. He estimates that at that moment he was about 120 feet from the mouth of the intersection and the truck was approximately 300 feet north on Plank road. He then states that, as he was about to enter the intersection, the truck

was about 250 feet away; that he looked in both directions and, having satisfied himself that he had ample time to cross the intersection, he continued on and had practically gotten across, the front end of his car being in Mohawk street, when it was struck violently from the rear and knocked into the ditch on the northwest corner of the intersection of Plank road with Mohawk street.

A vital point in the plaintiff's testimony with which it is impossible to agree is the one in respect to the distance the truck was from the intersection at the moment he was entering it. If, as he says, he was 120 feet away when he first saw the truck at a distance 300 feet north on Plank road, it is evident that the truck was nearer than 250 feet from the intersection at the moment he entered it. Even had the two vehicles been. traveling at approximately the same rate of speed, the truck could not have been more than 180 feet from the intersection, as necessarily it would have covered the same distance as the car in the same period of time. If plaintiff's estimate that the truck was going much faster than he was, obviously it would have been. still nearer the intersection when he was about to enter.

The defendant Calabreece, driver of the truck, testifies that at the time plaintiff started to cross the intersection the truck was about 25 feet north on Plank road and a young man named Curtis, 15 years old, who was with him, estimates the distance as being 20 feet.

We have to note at once, therefore, the conflict in the testimony of the occupants of the respective vehicles, the only eye-witnesses, on this important point. We emphasize its importance because in determining the right of the driver of the automobile on the less favored street, by reason of having pre-empted the intersection, over that of the one on the right of way street, a controlling factor is the distance at which the car on the favored street was from the intersection at the time the other entered it, thereby gaining his right of pre-emption. Of course no arbitrary figure can be set down as fixing such distance but it should be one at which, taking all the facts and circumstances into consideration, it would appear to a reasonable man, driving a car in the usual and normal manner, that he had time to clear the intersection before the car on the favored street entered it. The

facts and circumstances we have in mind may be said to be, for instance, the width of the intersection, the nature of its surface, any obstructions to its full view, the relative speed of the approaching cars, etc. In most cases, the point in the intersection at which the two cars come into actual contact, taking into consideration only the width of the two streets and the speed of the two cars, is determinative of the question as to whether the driver on the less favored street had pre-empted the intersection and could reasonably assume that the other would respect his right and permit him to proceed.

In this case, according to the physical facts as testified to by two disinterested witnesses who reached the scene of the accident within a few minutes after it happened, the point of impact may be said to have been very near 3 feet west of the center stripe of the paved portion of Plank road, on the north or right-hand side of the intersection, going west. These two witnesses, Philip Huyck and Nicholas Rousseau, both observed fan-shaped skid marks made no doubt by the rear tires of the plaintiff's car after it had been struck by the truck on the rear, right wheel. The car was turned completely around by the blow and came to rest in a ditch on the north side of Mohawk street, the back end against the north bank of the ditch and the front facing upward towards the southeast. Taking into consideration this point at which the impact took place, that is, 3 feet west of the center stripe, the width of the shoulder on the east side of Plank road, 7½ feet, the width of one-half of the concrete slab, 13½ . feet, and the length of the car, 12 feet, we find that the plaintiff had covered a distance of 36 feet from the place where he had entered the intersection to the point where his car was hit by the truck. The truck on the other hand had only covered a distance of approximately 8 feet from the point where it had entered the intersection from the north. Assuming, that the truck was traveling twice as fast as the automobile, which assumption, we think, is justified from the testimony in the case relative to the speed of the two cars, it is readily seen that, at the time the plaintiff entered the intersection, 36 feet away from the point of collision, the truck was between 65 and 70 feet north on Plank road. At that distance from him, we think that the plaintiff was justi-

fied in assuming, as he said he did, that he had ample time in which to clear the intersection, and that the defendant driver of the truck would yield him his right of pre-emption.

■ The testimony moreover indicates that the driver of the truck made practically no effort whatever to bring the truck under control or to avoid a collision in any manner. He states that his first impulse was to try to clear the car on the right by going into Mohawk street, but with plaintiff's car already practically entering that street itself, right in his path, we can't understand what chance he expected to have to avoid the accident by following that course. On the other hand he gives no satisfactory explanation why he did not pull over to his left-hand side where he had ample space in which to safely pass the plaintiff's car to its rear. His testimony impresses us with his own idea of having overestimated the advantage which he thought the law gave him by reason of his occupying the right of way street. In this idea of course he was mistaken, as our courts have repeatedly held that the superior privilege enjoyed by a driver of an automobile on the right of way street does not give him a license to drive as he pleases, regardless of the rights of others who may be occupying the streets or highways, driving in a lawful manner, and who, as in this case, may have acquired a right to which, under the law, he has to yield.

■ On the question of liability on the part of the defendants, we find ourselves in accord with the trial judge, and it remains now for us to consider the question of the amount of damages plaintiff should recover.

■ On account of the various injuries which he had sustained and the pain, both physical and mental, which he endured, plaintiff had asked for and was awarded the sum of $3,000 in the judgment appealed from. This award, we consider excessive. The most severe injuries were to that region around his right ear and to his lower right leg. The right ear was nearly severed, but fortunately, with skillful surgery, it seems to have been restored to its proper position with no ill effects. Plaintiff complains that his hearing has been somewhat affected because of the injury, but the proof does not support his claim in that respect.

The doctor who attended him describes the leg injury as a contused, lacerated wound which became infected after the accident and brought about a gangrenous area about an inch in diameter, with a sloughing out of the tissue to the covering of the bone. This was by far the most painful and extended injury which the plaintiff sustained and the one which disabled him until the month of July following the accident. In addition to these, he had a number of lacerated wounds about the head and scalp but they were not of a severe nature if we are to judge by the doctor's testimony. We believe that an award of $1,500 should compensate the plaintiff for these injuries as well as the pain and suffering which he experienced, and the amount allowed by the district judge will accordingly be reduced to that sum.

■ For loss of earnings during 4½ months of incapacity, the district judge allowed plaintiff the sum of $533. He evidently accepted plaintiff's own estimate of the extra money, amounting to approximately $45, he made per month over the salary of $61.60 he was earning at the time he was injured as an employee of the W.P.A. on the College Town Loop, south of the city of Baton Rouge. We do not find sufficient proof in the record to support plaintiff's estimate. For the entire year prior to his injury he was only able to show extra earnings of $81. This would average about $6 per month, which, added to his salary of $61.60, made a total of $67.60. He claims 4 months and 18 days loss of earnings and, based on the amount we have reached, he would therefore be entitled to recover $310.90 on this item.

■ For permanent disability, the district judge allowed the sum of $500. While the testimony on this item is not as satisfactory as might be, there is enough proof to the effect that as a result of his leg injury there may be some part of his duties relative to his work as a carpenter which plaintiff might not be able to perform. His doctor, whose opinion seems to be highly regarded by both sides, as well as by the district judge, says that, in walking and climbing ladders, he would experience some disability. On this item therefore, we are not inclined to disturb the amount allowed and it will stand as fixed by the trial judge.

The other items, namely, those for doctor's and medical expenses, for loss of personal belongings, and for damage to his automobile, all amounting to $246, were properly allowed plaintiff.

In view of the differences we have made in certain items of damage, the judgment appealed from will necessarily have to be amended.

For the reasons herein stated, it is therefore ordered that the judgment appealed from be amended by reducing the award from the sum of $4,279 to the sum of $2,556.90, and that, as thus amended, it be affirmed. Appellants to pay all costs.