## LOTSPEICH v. SHREVEPORT RYS. CO.

### No. 6019.

Court of Appeal of Louisiana. Second Circuit.

Nov. 3, 1939.

Rehearing Denied Jan. 5, 1940.

Certiorari Denied Feb. 5, 1940.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

L. L. Lockard, of Shreveport, for appellee.

DREW, Judge.

The lower court, in a well written opinion, has set out the issues, found the facts and applied the law correctly. The opinion is as follows:

"This suit results from an intersectional accident at Texas and McNeil Streets in the City of Shreveport.

"Texas Street runs approximately east and west and is 75 feet in width. McNeil Street runs approximately north and south and is 50 feet in width. The accident occurred shortly before seven o'clock on the morning of June 8, 1938, which was prior to the time when the traffic lights were placed in operation.

"Mr. Lotspeich was traveling south on McNeil Street in a Chevrolet coach and the defendant's trackless trolley was going west toward Red River on Texas Street. The trolley was approaching from the right of the Chevrolet.

"As is usual in such cases, the witnesses are in hopeless conflict as to the speed of the cars, the location of the accident and the fact of which one entered the intersection first.

"The speed of the Chevrolet, operated by the plaintiff in this case, was placed at approximately eight to twelve miles per hour by plaintiff's witnesses, and about forty miles per hour by the defense witnesses. The speed of the trolley varied from ten or twelve miles per hour to twenty-five miles per hour, according to whether the witness was testifying for the plaintiff or the defendant.

"The witnesses for plaintiff place the location of the accident in the southwest corner of the intersection, where as the witnesses for the defendant place the accident in about the center of the street.

"The theory of the plaintiff in this case is that he approached the intersection very slowly because of a depression at the curb line, shifted his car to second gear and proceeded to cross the street; that at the intersection he observed the trolley at a distance of approximately 100 feet or more from the intersection, and that he started across, feeling that he had the right of way and was safe in going into the intersection at that time.

"The defendant contends that since the trolley was approaching from the right and since they entered the intersection at approximately the same time, that he had the

"right of way under the law, and was entitled to proceed across McNeil Street; that the accident was due to the negligence and speed at which the plaintiff was operating his car.

"There are two physical facts which stand out in this case, and which, we think, are decisive of the question as to who entered the intersection first.

"At the north curb line of Texas Street there was a depression or dip, which made it impossible to drive a car at any speed in entering Texas Street at this point. Every witness who testified in the case on this question said that he would not have proceeded across the street at a speed in excess of ten or twelve miles per hour, because of the condition of the street. The city employee, who repaired this condition, testified that it was done in order to speed up traffic. The other fact that we think is important in this matter is that the plaintiff's car was locked in second gear after the accident.

"The trolley, in this case, was proceeding from the head of Texas Street, and, according to the testimony of the operator, did not make a stop at Louisiana, and neither did he have a signal for any stop at McNeil Street.

"Texas Street slopes gradually from the head of the street to approximately one block beyond where this accident occurred. The testimony also shows that this trolley was heavily loaded, and passengers were standing in the aisles.

"We quote here from the testimony of the operator of the trolley, on cross-examination:

" 'Q. You had a through run from the church right on through—all right, where was Mr. Lotspeich's car when you first saw it? A. Crossing the intersection coming into Texas.

" 'Q. You saw it just as it emerged into Texas Street? A. Yes.

" 'Q. You did not see it before? A. No, sir.

" 'Q. In other words, it was over the line where passengers cross on McNeil Street and head into Texas Street? A. They were crossing that point at that time.

" 'Q. Where were you at that time— where was your car at that time? A. I was approaching McNeil about twenty feet to fifteen feet.'

"We think the accident occurred slightly in the southwest corner of the intersection. The trolley was being operated on the tracks that ordinarily are used by regular street cars, and these tracks were slightly to the right center of the street going east. Assuming that the plaintiff was not on the wrong side of the street, and there is no evidence to show that he was, we think that the accident undoubtedly occurred somewhere off the center of the intersection.

"The fact that Texas Street is wider than McNeil Street, and that plaintiff undoubtedly had his car in second gear and was proceeding at a slow rate of speed, convinces us that he preempted the intersection and had the right of way over the trolley in this case. Franz v. Shushan, 14 La.App. 465, 131 So. 591; Calamia v. National Hosiery Mills et al., La.App., 164 So. 146; Bagert v. Maestri et al., 18 La.App. 94, 131 So. 863; General Exchange Ins. Corp'n. v. Carp, La.App., 176 So. 145; Balsamo v. Hall, 170 So. 402, 405.

"In the case of Hamilton v. Lee, La.App., 144 So. 249, 253, the court quoted, with approval, the following statement and citation from Berry on Automobiles: ' "If the driver who has not the right-of-way, looked when considerable distance from the crossing and was justified in the belief that he had ample time to cross in front of a machine having the right-of-way, he was not negligent, as a matter of law, in not making subsequent observations." Citing Werner v. Yellow Cab Co., 177 Wis. 592, 188 N.W. 77.'

"In the case of Wilson v. New Amsterdam Casualty Company, La.App., 180 So. 870, 872, the court in considering a similar situation, said: 'Assuming, that the truck was traveling twice as fast as the automobile, which assumption, we think, is justified from the testimony in the case relative to the speed of the two cars, it is readily seen that, at the time the plaintiff entered the intersection, 36 feet away from the point of collision, the truck was between 65 and 70 feet north on Plank road. At that distance from him, we think that the plaintiff was justified in assuming, as he said he did, that he had ample time in which to clear the intersection, and that the defendant driver of the truck would yield him his right of preemption.'

"We consider that these cases are controlling of the case now presented to the court. The evidence satisfied us that at the time the plaintiff entered this intersection, the de-

fendant's trolley was at least 75 to 100 feet from the intersection, and that, therefore, the plaintiff had the right of way.

■ "The question of quantum of damages is always very difficult in such a case as this. Unquestionably, the plaintiff is entitled to $100.00 for damages to his car, $39.-00 for nurses' bills and $42.00 for doctor and sanitarium bills. The plaintiff sues for $1,200.00 for pain and suffering, and the evidence shows that he was unconscious after the accident for a period of 15 or 20 minutes, and was confined to the hospital for six days. The plaintiff was also unable to return to his employment for 27 days, and for a considerable time thereafter was unable to work regularly. There are no permanent injuries and no disfigurement, although the plaintiff complains of headaches, which, he says, have been almost constant since the time of the accident.

"We believe that an award of $750.00 will compensate plaintiff for these injuries, as well as the pain and suffering. he experienced.

"For the reasons cited herein, there is judgment in favor of the plaintiff, Leonard J. Lotspeich, and against the defendant, Shreveport Railways Company, in the sum of $931.00, with interest at the rate of 5% from judicial demand until paid, and all costs of this suit. There is further judgment rejecting the reconventional demand of the defendant.

"John R. Pleasant
"District Judge."

■ Application for rehearing was filed by defendant, and after hearing argument on same, the lower court rendered another written opinion, in which it said:

"In our opinion, in this case, we failed to discuss the plea of contributory negligence filed by the defendant, and neither was the question of last clear chance considered.

"After listening to argument of counsel and studying the brief of counsel for defendant, the attorneys, at our request, argued these two questions again.

"We have again reviewed the testimony in this case, and the court is further strengthened in its original finding that the plaintiff preempted the intersection, and that at that time, the defendant's trolley was some 100 to 120 feet from the intersection. Again we emphasize that this result is largely based on the plaintiff's car being locked in second gear, and the fact that there was such a depression in the north curb line of Texas Street at the point where McNeil Street intersects, that it would be most unlikely that a car would cross at an excessive rate of speed.

"We do not think in this case, that it is necessary to consider the question of contributory negligence, for the facts, we think, show a case for the application of the doctrine of the last clear chance. And in discussing the evidence in that connection, it shall be conceded that Lotspeich was negligent, and, if so, clearly it continued up to the time of the accident, because he frankly stated that he did not look, after entering the intersection, until the· trolley was about to collide with his car."

It then assumed that plaintiff was guilty of negligence, which continued up to the moment of the accident. Assuming this state of fact, it proceeded to apply the doctrine of last clear chance and found that defendant had the last clear chance to avoid the accident, therefore, its original judgment was reinstated.

A careful study of the record convinces us that the facts found by the lower court, in its original opinion, and reaffirmed in its opinion on application for rehearing, are the true facts in the case. This being so, plaintiff was not guilty of any negligence, and, therefore, the prerequisite necessary for application of the doctrine of last clear chance is wanting in the case.

Defendant seriously urges that the case at bar is on all fours with the case of Driefus v. Levy, 140 So. 259, 263, decided by this court. In our opinion, the difference in the two cases is great, and lies in the different state of facts existing in the cases. After stating the facts in the cited case, we said, "Any reasonably prudent man should have known that the crossing could not be made without a collision." This statement was predicated upon the fact that the truck driver in that case had seen the Driefus car coming at a speed sufficient to impact his car before he could cross, and had seen that the driver of the Driefus car did not see him and was not going to respect his, the truck driver's, rights. The record in the case at bar establishes an entirely different state of facts, and the rule in the Driefus case is not applicable.

The amount of damages awarded plaintiff by the lower court is reasonable and fully warranted by the evidence.

We find no error in the judgment of the lower court, and it is affirmed with costs.