Warren WOELLHAF, Petitioner,

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 03SC664.**

Supreme Court of Colorado, En Banc.

Jan. 18, 2005.

210

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Acting Attorney General, Melissa D. Allen, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Respondent.

MARTINEZ, Justice.

In this case, we determine the unit of prosecution for the crimes of sexual assault on a child, section 18–3–405, C.R.S. (2004), and sexual assault on a child by one in a position of trust, section 18–3–405.3, C.R.S. (2004).[1] We hold that these statutes proscribe "any sexual contact" and therefore do not define separate offenses for each type of sexual contact. After determining the legislatively prescribed unit of prosecution, we proceed to the factual component of our test. We conclude that, due to the manner in which the prosecution grouped the sexual contacts in this case, there was a single factual offense. Accordingly, the multiple punishments in this case, based on different types of sexual contact, are barred by principles of double jeopardy.

## I. Facts and Proceedings Below

A jury convicted Warren M. Woellhaf of four counts of sexual assault on a child pursuant to section 18–3–405, and four counts of sexual assault on a child by one in a position

---

1. We granted certiorari to consider:
   Whether a single incident of sexual assault on a child (or sexual assault on a child—position of trust) can be broken down into fragments to support multiple sexual assault on a child counts, resulting in multiple sexual assault on a child convictions, without violating the principles of double jeopardy.

of trust pursuant to section 18–3–405.3. Woellhaf was also convicted of other felonies not at issue here.[2] The convictions were the result of allegations that Woellhaf had sexually assaulted his five-year old daughter, A.W.

On December 26, 1998, Woellhaf's daughter, A.W., revealed to her foster mother that Woellhaf had sexually assaulted her. Subsequently, during video-taped interviews, A.W. stated that she had been assaulted ten times. Although she could not specify when the assaults occurred, A.W. described four specific types of sexual contact: 1) rubbing lotion on her vagina; 2) digital penetration of her vagina; 3) penile penetration of her vagina; and 4) ejaculating on her stomach. Thereafter, investigators narrowed the time frame of the assaults to between August 16, 1998 and September 16, 1998.

On June 8, 1999, Woellhaf was charged with ten identical counts of sexual assault on a child, section 18–3–405, and ten identical counts of sexual assault on a child by one in a position of trust, section 18–3–405.3. Nothing in the identical counts distinguished one count from another or associated any count with a particular assault.[3] Moreover, nothing in the evidence, aside from A.W.'s statement that she had been assaulted ten times, provided any detail from which one assault could be distinguished from another. The vagueness of the evidence apparently caused the prosecution to dismiss five of the ten counts for each offense. Subsequently, Woellhaf requested a bill of particulars to compel the prosecution to elect five of the alleged ten assaults in support of the remaining five counts. The trial court denied the request.

During the trial, at the close of the prosecution's case in chief, Woellhaf moved for judgment of acquittal. Defense counsel argued that, based on the evidence, it was impossible for a reasonable juror to designate which five of the ten alleged assaults actually occurred or were being prosecuted. In response, the prosecution revealed that rather than elect separate acts or incidents of assault for each count, it was supporting four of the five counts with the four specific types of sexual contact described by A.W., and a fifth count of each offense by alleging that A.W.'s mother witnessed the four types of sexual contact. The prosecution made this election without regard to the result that none of the counts then related to a separate act or incident of sexual assault.

Specifically, to support one count of sexual assault on a child and one count of sexual assault on a child by one in a position of trust, the People elected a type of sexual contact described as "penis in vagina." The People supported a second count of each offense with a type of sexual contact described as "digital penetration," a third count of each offense with a type of sexual contact described as "rubs lotion on the vagina," and a fourth count of each offense with a type of sexual contact described as "ejaculates on stomach." In support of the fifth counts, the People alleged that A.W.'s mother witnessed these four types of sexual contact.

---

2. Woellhaf was also convicted on two counts of second degree sexual assault, § 18–3–403, 6 C.R.S. (1998) (repealed July 1, 2000), and one count of aggravated incest, § 18–6–302, 6 C.R.S. (1998). The second degree sexual assault convictions were later dismissed at sentencing.

3. The identical counts were provided for in the information as follows:

FIRST [THROUGH TENTH] COUNT ... between and including August 16, 1998 and September 16, 1998, in the County of Arapahoe, State of Colorado, WARREN MCGREGOR WOELLHAF did unlawfully, feloniously and knowingly subject another, namely, [A.W.], not his spouse, to sexual contact, and [A.W.] was less than fifteen (15) years of age and WARREN MCGREGOR WOELLHAF was at least four (4)

years older than [A.W.], and WARREN MCGREGOR WOELLHAF committed the offense as part of a pattern of sexual abuse; in violation of Section 18–3–405(1)(2)(d), C.R.S.; SEXUAL ASSAULT ON A CHILD—PATTERN

ELEVENTH [THROUGH TWENTIETH] COUNT ... between and including August 16, 1998 and September 16, 1998, in the County of Arapahoe, State of Colorado, WARREN MCGREGOR WOELLHAF did unlawfully, feloniously and knowingly subject [A.W.], a child less than fifteen years of age, who was not his spouse, to sexual contact, and WARREN MCGREGOR WOELLHAF was in a position of trust with respect to [A.W.] and WARREN MCGREGOR WOELLHAF committed the offense as part of a pattern of sexual abuse; in violation of Section 18–3–405.3, C.R.S.; SEXUAL ASSAULT ON A CHILD BY ONE IN A POSITION OF TRUST-PATTERN

Because this last allegation did not constitute sexual contact, the trial judge dismissed the fifth counts. However, over defense counsel's objection, the court allowed the People to proceed on the theory that each of the four different types of sexual contact supported one of the four counts under sexual assault on a child and sexual assault on a child by one in a position of trust.

The case was submitted to the jury. The jury returned guilty verdicts on all counts. The verdict forms did not require the jury to determine that the sexual contacts occurred on separate occasions as separate acts or incidents.[4] At sentencing, the court imposed consecutive twelve-year sentences for each of the four counts of sexual assault on a child. These sentences ran concurrent to twelve-year sentences for each count of sexual assault on a child by one in a position of trust. In total, Woellhaf was sentenced to forty-eight years imprisonment. In *People v. Woellhaf,* 87 P.3d 142 (Colo.App.2003), the court of appeals affirmed Woellhaf's convictions.[5]

At issue before us is whether Woellhaf's multiple convictions for sexual assault on a child, section 18–3–405, and sexual assault on a child by one in a position of trust, section 18–3–405.3, violate the Double Jeopardy Clause. It is Woellhaf's position that the trial court erred by allowing the People to elect different types of sexual contact, rather than separate acts or incidents of sexual assault. The product of that error, Woellhaf argues, was the jury's return of four convictions under each of the two statutes without

deciding whether the four types of contact were separate incidents. Under these circumstances, Woellhaf claims he can only be convicted of one count under each statute.

The People agree that the record does not indicate whether the four types of sexual contact occurred as part of separate incidents. Further, because of the way in which the contacts were grouped within the various counts, the People concede at this time in the proceedings that if each type of contact is not itself a single unit of prosecution, we must regard the sexual contacts as having occurred as part of a single incident.

## II. Analysis

We begin by reviewing principles of double jeopardy and the concept of multiplicity. After discussing the nature of the multiplicity issue before us, we ascertain whether the legislatively prescribed unit of prosecution of sexual assault on a child, section 18–3–405, or sexual assault on a child by one in a position of trust, section 18–3–405.3, permits multiple punishments for a single incident of sexual assault on a child. We determine that the General Assembly has not specifically authorized multiple punishments for each and every type of sexual contact that transpires within one act or incident of sexual assault on a child. Accordingly, because neither the unit of prosecution of sexual assault on a child, nor the unit of prosecution of sexual assault on a child by one in a position of trust, defines separate offenses for each type of sexual contact within one act or incident of sexual assault on a child, we hold that the

4. The verdict forms differed only in their designation of each type of sexual contact. Thus, the verdict forms for sexual assault on a child provided:
Sexual Assault on a Child—Penis Inside Vagina, Count One
Sexual Assault on a Child—Digital Penetration, Count Two
Sexual Assault on a Child—Rubs Lotion on Vagina, Count Three
Sexual Assault on a Child—Ejaculates on Stomach, Count Four
Similarly, the verdict forms for sexual assault on a child by one in a position of trust provided:
Sexual Assault on a Child By One in a Position of Trust—Penis Inside Vagina, Count Six
Sexual Assault on a Child By One in a Position of Trust—Digital Penetration, Count Seven

Sexual Assault on a Child By One in a Position of Trust—Rubs Lotion on Vagina, Count Eight
Sexual Assault on a Child By One in a Position of Trust—Ejaculates on Stomach, Count Nine

5. Although the court of appeals affirmed these convictions, it vacated the pattern of abuse sentencing enhancements provided for in subsections 18–3–405(2)(d) and 18–3–405.3(2). The court of appeals also found that the trial court erred in imposing a period of mandatory parole rather than discretionary parole. *See People v. Cooper,* 27 P.3d 348, 358 (Colo.2001). Finally, the court of appeals reversed the trial court's finding that Woellhaf qualified as a sexually violent predator pursuant to § 18–3–414.5, 6 C.R.S. (1998).

multiple punishments at issue here violate state and federal double jeopardy protections and cannot be sustained.

## A. Double Jeopardy and Multiplicity

The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime. U.S. Const. Amend. V; Colo. Const., art. II, § 18; *Boulies v. People*, 770 P.2d 1274, 1277 (Colo. 1989). The Double Jeopardy Clause protects not only against a second trial for the same offense, but also "against multiple punishments for the same offense." *Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Notwithstanding these protections, the Double Jeopardy Clause does not prevent the General Assembly from specifying multiple punishments based upon the same criminal conduct. *Patton v. People*, 35 P.3d 124, 129 (Colo. 2001). However, if the General Assembly has not conferred specific authorization for multiple punishments, double jeopardy principles preclude the imposition of multiple sentences. *People v. Leske*, 957 P.2d 1030, 1035 (1998). In this respect, the Double Jeopardy Clause simply embodies the constitutional principle of separation of powers by ensuring that courts do not exceed their own authority by imposing multiple punishments not authorized by the legislature.[6] *Whalen*, 445 U.S. at 689, 100 S.Ct. 1432.

Double jeopardy is commonly implicated in multiplicity issues. Multiplicity is the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct. *People v. Borghesi*, 66 P.3d 93, 98 (Colo.2003); *United States v. Morehead*, 959 F.2d 1489, 1505 (10th Cir. 1992). Although not fatal to an indictment, multiplicity may improperly suggest to the jury that the defendant has committed more than one crime. *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir.1997). Hence, the vice of multiplicity is that it may lead to multiple sentences for the same offense and thereby implicate double jeopardy protections. *Id.;* 1A Charles Alan Wright, *Federal Practice & Procedure* § 142, at 17 (Crim.3d ed. 1999 & Supp.2004).

Multiplicity issues tend to arise in three distinct contexts. The first involves two or more statutory provisions that proscribe the same criminal conduct. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In these situations, courts determine the number of offenses by comparing only the elements of the statutory provisions at issue, without looking to the facts of the case, to discern whether one provision "requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. 180; *see also Patton*, 35 P.3d at 130–31 (statutory elements test used to demonstrate that possession of a controlled substance is a lesser-included offense of manufacture of a controlled substance, thus two provisions proscribed a single offense); *Leske*, 957 P.2d at 1038 (statutory elements test used to demonstrate that sexual assault on a child is not a lesser-included offense of sexual assault on a child by one in a position of trust, thus two provisions proscribed two offenses).

The second type of multiplicity issue involves a series of repeated acts that are charged as separate crimes even though they are part of a continuous transaction and therefore actually one crime. *See Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *People v. Williams*, 651 P.2d 899 (1982); 4 W. LaFave et al., *Criminal Procedure* § 19.3(c), at 776 (2d ed. 1999 & Supp.2005). In these situations, the inquiry is whether the General Assembly has

---

6. We have held that the Colorado Double Jeopardy Clause affords an accused greater protection against subsequent prosecutions after acquittal than the federal Double Jeopardy Clause. *Leske*, 957 P.2d at 1035 n. 6. However, where consecutive sentences are imposed at a single criminal trial, the Colorado Double Jeopardy Clause is coextensive with its federal counterpart in that it is limited to assuring that a court does not exceed its legislative authorization by imposing multiple punishments for the same offense. *See id.; see also Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *People v. Haymaker*, 716 P.2d 110, 116 (Colo.1986).

defined the crime as a continuous course of conduct. *See Williams,* 651 P.2d at 904.

■ The third type of multiplicity issue, which arises in this case before us today, involves statutes providing for alternate ways of committing the same offense. *See* W. LaFave, *supra.* Such an issue may arise if imprecise statutory language leads a prosecutor to charge multiple counts of the same offense because a defendant has committed the crime using more than one of the prohibited alternative methods. *See Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In these situations, whether multiple punishments are permissible entails a determination of the legislatively prescribed unit of prosecution. *Sanabria,* 437 U.S. at 70–71, 98 S.Ct. 2170; *Williams,* 651 P.2d at 902–03; *see also Ladner,* 358 U.S. at 173, 79 S.Ct. 209; *Bell,* 349 U.S. at 81, 75 S.Ct. 620.

■ In *Williams,* we adopted a two-prong test for determining the legislatively prescribed unit of prosecution and then applying the legislative prescription to the facts of the case. 651 P.2d at 902. We established that the issue involves "first, an examination of the scope of prosecution authorized by the statutory prescription, and, next, an examination of the factual components of each prosecution and the evidence in support thereof." *Id.* Accordingly, we must now ascertain the unit of prosecution prescribed by the legislature, and then look to the facts to determine whether there are multiple violations of the statutorily proscribed offense.

## B. Unit of Prosecution: Legislative Prescription

■ It is the province of the legislature to establish and define offenses by prescribing the allowable unit of prosecution. *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Sanabria,* 437 U.S. at 69–70, 98 S.Ct. 2170; *Williams,* 651 P.2d at 903. The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses. *Borghesi,* 66 P.3d 93 n. 5;

*see also Callanan v. United States,* 364 U.S. 587, 597, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961) (unit of prosecution discerns whether conduct constitutes one or several violations of a single statutory provision). Once the General Assembly prescribes the unit of prosecution, that prescription determines the scope of protection offered by the Double Jeopardy Clause. *Williams,* 651 P.2d at 903. Thus, whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on legislative choice. *Id.* (quoting *Sanabria,* 437 U.S. at 70, 98 S.Ct. 2170).

■ To determine the unit of prosecution, we look exclusively to the statute. In construing a statute, we must ascertain and effectuate the legislative intent. *People v. Longoria,* 862 P.2d 266, 270 (Colo.1993). The General Assembly's intent is to be discerned when possible from the plain and ordinary meaning of the statutory language. *People v. Davis,* 794 P.2d 159, 180 (Colo. 1990). However, if the statutory language is ambiguous and therefore susceptible to alternate constructions, we look to principles of statutory construction to ascertain legislative intent. *Farmers Ins. Exchange v. Bill Boom Inc.,* 961 P.2d 465, 469 (Colo.1998).

We turn now to the statutes at bar. The General assembly has defined the crime of sexual assault on a child as follows:

(1) Any actor who knowingly subjects another not his or her spouse to *any sexual contact* commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

§ 18–3–405 (emphasis added).

The crime of sexual assault on a child by one in a position of trust provides:

(1) Any actor who knowingly subjects another not his or her spouse to *any sexual contact* commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim.

§ 18–3–405.3 (emphasis added).

■ From the plain language of the statutes, we find that neither section 18–3–405,

nor section 18–3–405.3 specifically authorizes multiple punishments for each discrete act of sexual contact that occurs within a single incident of sexual assault on a child. The General Assembly has defined as the unit of prosecution "any sexual contact." "Sexual contact" is "the knowing touching of the victim's intimate parts by the actor." § 18–3–401(4), C.R.S. (2004). We have said that "any" connotes a lack of restriction or limitation. *Obert v. Colo. Dept. of Soc. Services,* 766 P.2d 1186, 1191 (Colo.1988). Thus, because "any" modifies "sexual contact," we interpret "any sexual contact" as an unlimited, non-restrictive phrase that generally encompasses a multitude of types of sexual contacts. *Cf. Boulies,* 770 P.2d at 1280 ("any" used to modify several enumerated felonies allowed imposition of felony murder conviction for the taking of human life while the accused was perpetrating or attempting to perpetrate any of the enumerated felonies).

Because we draw our conclusion from the plain language of the statutes, we need not examine the legislative history. *See Longoria,* 862 P.2d at 270. Nonetheless, the legislative history does not convince us that the General Assembly sought to proscribe each individual sexual contact that occurs within a single incident of sexual assault on a child. Discussion prior to the original enactment of section 18–3–405 reveals that "any sexual contact" may have been intended to incorporate provisions of the then-existing second degree sexual assault statute. *An Act Concerning Unlawful Sexual Behavior: Hearing on H.B. 1042 before the House Judiciary Committee,* 50th Gen. Assemb., 1st Sess. (Feb. 24, 1975). While this may demonstrate the General Assembly's intent to proscribe a multitude of different types of sexual contact under the umbrella "any sexual contact," it does not evince a legislative intent to separately punish each type of sexual contact that occurs within one incident of sexual assault. Support for this proposition is found at a later committee hearing where Representative Bendelow commented that "sexual contact deals with a number of indefinites." *An Act Concerning Unlawful Sexual Behavior: Hearing on H.B. 1042 before the House Judiciary Committee,* 50th Gen. Assemb., 1st

Sess. (Feb. 27, 1975). Although there have been several revisions to the statute since its enactment, nowhere in the evolution of section 18–3–405 do we find any indication that the General Assembly intended to separately punish each and every different type of sexual contact that transpires within one incident of sexual assault.

Similarly, testimony before the House Judiciary Committee surrounding the enactment of section 18–3–405.3 reveals that it was originally intended to address incidents of child abuse within the public school system. Representative Faatz, the bill's sponsor, stated that one objective of the bill was to close the loophole of sexual relations between teachers and children 15 to 18 years of age. *An Act Concerning Unlawful Behavior Involving Children, And, In Connection Therewith, Changing Procedures Concerning Child Abuse Or Neglect Reporting, Clarifying Hearing Procedures Relating To Temporary Custody Of Children, Redefining The Crime Of Sexual Assault On A Child By One In A Position Of Trust, And Establishing Procedures For The Maintenance Of Information Concerning Unlawful Behavior Involving Children Committed By School District Personnel: Hearing on H.B. 1133 before the House Judiciary Committee,* 57th Gen. Assemb., 2nd Sess. (Jan. 23, 1990). Thereafter, Marty Hauser, General Counsel for the Colorado Education Association, suggested that the language "unlawful sexual behavior" incorporate other types of "unlawful behavior." *Id.* Again, while this testimony may lead one to believe that the General Assembly intended to cover a multitude of types of behavior, it says nothing about separate punishments for each different type of sexual contact. Thus, neither the plain language of the statutes, nor their legislative history gives us any reason to extrapolate a specific legislative intent to impose separate punishments for each and every touching that transpires within a single act or incident of sexual assault on a child.

Nevertheless, the People urge us to look beyond "any sexual contact," to the definition of "intimate parts" as defined in section 18–3–401(2). The People argue that because the General Assembly listed six intimate parts,

each demarcated by the disjunctive "or," it created a new offense for "each act of knowing touching." We are not persuaded.

The General Assembly borrowed the definition of "intimate parts" from the Michigan legislature.[7] However, it did not adopt that state's definition of the crime of sexual assault on a child. Michigan's statute punishes "sexual contact," while as noted previously, our statute punishes "any sexual contact." Thus, the General Assembly's use of the disjunctive "or" is not dispositive here.

As defined by the General Assembly, the term "intimate parts" means "the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person." § 18-3-401(2), C.R.S. (2004). The disjunctive "or" demarcates different categories. *See Holliday v. Bestop, Inc.,* 23 P.3d 700, 705 (Colo.2001). As used in the definition of "intimate parts," the word "or" merely demarcates different intimate parts of the human anatomy. This categorization has no effect on the scope of conduct the General Assembly sought to criminalize. The General Assembly simply established a list of intimate parts that if touched, satisfy the element of "any sexual contact." Indeed, had the General Assembly not used the disjunctive, the element of sexual contact would remain incomplete until each and every intimate part were touched.

We have entertained this argument before. In *People v. Holmes,* 129 Colo. 180, 268 P.2d 406 (1954), we held that by using the disjunctive "or" in the burglary statute, the General Assembly did not create two offenses, but rather alternative ways of violating the one statute. We said:

> This single statute defines the crime of burglary; sets out the means that may be employed to accomplish the crime; and provides only one penalty for the crime

regardless of the manner in which it is achieved. Stated in another way, the statute may be violated in either of the ways mentioned; however, the final result is burglary.

*Id.* at 182, 268 P.2d at 407.

Our reasoning in *Holmes* echoed that of *Wright v. People,* 116 Colo. 306, 181 P.2d 447 (1947). In *Wright,* we held that the crime of forgery "may be committed in any one of several different ways, that is—falsely 'making' or 'altering' or 'forging' or 'counterfeiting' or 'uttering' [a check or draft]. No matter in which way the act is violated, the crime committed is forgery." *Id.* at 310, 181 P.2d at 449.

Similarly, in *People v. Viduya,* 703 P.2d 1281, 1292 (Colo.1985), we said that the vehicular homicide statute defines a single offense that can be committed two ways—causing the death of another while operating a motor vehicle in a reckless manner, or while under the influence of any drug or intoxicant. Thus, we rejected the argument that the statute defined two separate offenses and held:

> Simply because the alternative ways for committing a single offense require proof of different acts and even different culpable mental states does not mean that a single offense has not been defined by the statute, or that the offense may not be alleged in a single count of an information
> . . . .

*Id.*

The principles articulated in *Holmes, Wright,* and *Viduya* are equally applicable here. By demarcating intimate parts with the disjunctive "or," the General Assembly did not prescribe multiple offenses or otherwise alter the scope of the unit of prosecution.

---

7. The definition of "intimate parts" was derived from Michigan law. *An Act Concerning Unlawful Sexual Behavior: Hearing on H.B. 1042 before the House Judiciary Committee,* 50th Gen. Assemb., 1st Sess. (Feb. 19, 1975). Like our statute, the Michigan statute does not expressly provide that the touching of each listed body part within the definition of intimate parts constitutes a separate offense. *See Mich. Comp. Laws Ann.* § 750.520a(c) (West 2004) (defining "intimate

parts" as the "primary genital area, groin, inner thigh, buttock, or breast of a human being"). However, in an unpublished decision, the Michigan Court of Appeals construed the definition of "intimate parts" as comprising distinct offenses. *See People v. Thomas,* No. 191594, 1997 WL 33349425 *3 (Mich.App.Ct.1997) (holding that each completed sexual contact constitutes a separately punishable offense).

Moreover, our methodology of discerning the allowable unit of prosecution in this case is consistent with that employed to discern the unit of prosecution of other crimes. For example, in *People v. Berner*, 42 Colo.App. 520, 521–22, 600 P.2d 112, 113 (1979), the court of appeals held that two separate blows delivered to the same victim within a short period of time were included in a single unit of prosecution for assault in the third degree. The court of appeals reasoned that the two blows were part of a single criminal transaction arising from a single impulse. *Id.*

To illustrate the question presented in this case, we look to our decision in *Borghesi*, 66 P.3d 93. In *Borghesi*, we reinstated a second robbery conviction stemming from a single liquor store robbery involving two victims. 66 P.3d at 98. We reinstated the second conviction because the issue concerning the unit of prosecution turned on whether the robbery statute primarily protects people rather than property. *Id.* After determining that the robbery statute is meant to protect people, we held that principles of double jeopardy are not offended when multiple punishments are imposed against those who rob multiple persons. *Id.* at 102–03. *Borghesi* is therefore dissimilar to the issue presented to us here, which focuses instead on whether alternative means of committing the same offense are separately punishable.

To analogize the issue in this case to the context of *Borghesi*, we see that robbery is the knowing taking of anything of value from the person of another by force, threats, or intimidation. Although we do not now undertake to discern the unit of prosecution of robbery, the issue in the context of *Borghesi* would ask whether one who robs by means of force, threats, and intimidation would be liable for three counts of robbery because he used force, threats, and intimidation.

This analogy demonstrates that the General Assembly may proscribe alternative means of committing the same offense. Yet if more than one of the proscribed methods is used to accomplish the offense, a court may not infringe on the General Assembly's role by imposing multiple punishments for each prohibited method a defendant uses. Rather, courts remain bound by principles of double jeopardy to adhere to the legislatively prescribed unit of prosecution. In this case, the unit of prosecution of sexual assault on a child, section 18–3–405, and sexual assault on a child by one in a position of trust, section 18–3–405.3, prohibits "any sexual contact." The statutes proscribe a multitude of sexual contacts that vary in nature and type, including the four types involved here. Neither the prosecution nor the courts may fracture this unit of prosecution into multiple counts. "The Double Jeopardy Clause is not such a fragile guarantee that its limitations can be avoided by the simple expedient of dividing a single crime into a series of ... discrete bases of liability not defined as such by the legislature." *Sanabria*, 437 U.S. at 72, 98 S.Ct. 2170 (citing *Brown*, 432 U.S. at 169, 97 S.Ct. 2221).

On the other hand, we do not suggest that the statute defines sexual assault on a child such that the prosecution may never charge separate offenses arising from a single course of conduct or criminal episode. *See Holmes*, 129 Colo. at 182, 268 P.2d at 407 (intimating that separate charges may nonetheless be brought under a statute defining a single offense committed by different means if the acts committed are not so closely related that they may be charged conjunctively in a single count); *see also People v. Saars*, 196 Colo. 294, 304, 584 P.2d 622, 629 (1978) (separate charges sustained by evidence of separate assaults performed in separate time periods). Instead, we only interpret the sexual assault on a child statute to preclude legally separate offenses for each touching, irrespective of the context within a course of conduct. The prosecution may pursue multiple convictions if the underlying evidence supports factually distinct offenses. *See Patton*, 35 P.3d at 129 (holding that in the absence of express legislative authorization, a reviewing court must ascertain whether the offenses as charged are sufficiently factually distinguishable to otherwise permit imposition of multiple punishments).

## C. Factual Examination

■ After determining the unit of prosecution designated by the General Assembly, double jeopardy analysis requires us to con-

sider whether the defendant's conduct constitutes factually distinct offenses, that is, whether the conduct satisfies more than one defined unit of prosecution. In *Quintano v. People*, No. 03SC567, 105 P.3d 585, 2005 WL 89380. (Colo. January 18, 2005), also decided today, after identifying the unit of prosecution, we proceed to decide whether the defendant's conduct constitutes factually distinct acts, and therefore, factually distinct offenses. In arriving at the conclusion that the conduct in that case constituted factually distinct offenses, we articulated a number of factors that tend to establish whether each contact is factually separate and distinct from others so as to constitute factually distinct offenses. *Quintano*, No. 03SC567, 105 P.3d at 591–592. These factors include whether the contacts occurred at different locations, were the product of new volitional departures, or were separated by intervening events. *Quintano*, No. 03SC567, at 591–592.

■ However, in this case, applying the factors we set forth in *Quintano* is problematic for several reasons. Here, neither the counts, nor the evidence, provide any basis to determine whether the types of sexual contact occurred in one place at one time or in separate places and times. The record is silent with regard to when, where, or how the four sexual contacts transpired. From the evidence, we cannot ascertain the temporal proximity of the acts, whether the acts occurred in different locations, or whether the acts were the product of new volitional departures. The record is simply devoid of any evidence from which we can discern factually distinct offenses. Thus, the People conceded that, given the way this case was ultimately presented, we must regard the types of sexual contact as having been inflicted in one single incident. In *Quintano*, we rejected an argument that the defendant's convictions were multiplicitous because the record evidenced that the multiple charges were supported by evidence of distinct acts of touching. *Quintano*, No. 03SC567, at 592. Although we did not adopt any specific factors for resolving the issues, we were guided by the factors established by other jurisdictions. *Quintano*, No. 03SC567, at 591–592.

We highlighted evidence indicating the relocation of the victim to various areas of the house; statements by the defendant indicating renewed intentions; presence of sufficient break in acts; and other circumstances offering the defendant an opportunity to reflect before embarking on a new course of conduct. *Quintano*, No. 03SC567, at 591–592.

Here, however, the four convictions for four types of sexual contact cannot be differentiated as factually distinct offenses precisely because the counts and the evidence do not provide any basis to assess whether the times, locations, volitional departures, or any other factors support separate offenses. Indeed, the lack of detail of the surrounding circumstances within which the contacts occurred left the People with no way to distinguish between the counts other than by type. As such, having decided that the unit of prosecution is not each type of contact, we cannot now determine from the People's designation of the counts by type of contact that there was more than one offense. We, therefore, arrive at the forgone conclusion that there was a single factual offense. The People are correct in that given the way this case was ultimately presented, we must conclude that the four types of sexual contact that transpired within this one incident of sexual assault constitute one factual offense. Accordingly, the four convictions for sexual assault on a child and four convictions for sexual assault on a child by one in a position of trust violate state and federal double jeopardy protections and cannot stand.

### III. Conclusion

We hold that the unit of prosecution for the crimes of sexual assault on a child, section 18–3–405, and sexual assault on a child by one in a position of trust, section 18–3–405.3, is "any sexual contact." We further hold that the neither of the statutes' unit of prosecution defines separate offenses for each type of sexual contact. Accordingly, because of the manner in which the multiple convictions were grouped in this case, we find that the multiple punishments are barred by principles of double jeopardy.

Therefore, the judgment of the court of appeals is reversed with respect to the issues addressed in this opinion. On remand, the trial court shall merge the four convictions of sexual assault on a child into one conviction, merge the four convictions of sexual assault on a child by one in a position of trust into one conviction, and resentence the defendant accordingly.