The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 11, 2021

## 2021COA28

**No. 17CA0720, *People v. Grosko* — Crimes — Pimping; Criminal Law — Limitation for Commencing Criminal And Juvenile Delinquency Proceedings — Continuing Offenses; Constitutional Law — Fifth Amendment — Double Jeopardy — Multiplicity**

A division of the court of appeals decides two matters of first impression with respect to the pimping statute, section 18-7-206, C.R.S. 2020. First, the division concludes pimping is defined by the statute as a continuing offense. Second, the division concludes that the unit of prosecution for pimping is defined as per person; that is, an individual who is supported by funds derived from another's prostitution may be prosecuted based on the number of prostitutes that they receive money or other things of value from. In addition, the division concludes that the district court did not abuse its

discretion in allowing expert witness testimony in this case.  For these reasons, the judgment of conviction is affirmed.

COLORADO COURT OF APPEALS                                          **2021COA28**

Court of Appeals No. 17CA0720
Jefferson County District Court No. 15CR3357
Honorable Randall C. Arp, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Jay Grosko,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE ROMÁN
Welling and Brown, JJ., concur

Announced March 11, 2021

Philip J. Weiser, Attorney General, Kevin E. McReynolds, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Robert Jay Grosko, appeals the judgment of conviction entered after a jury found him guilty of pimping, attempted pimping, solicitation, and pandering.  We affirm defendant's convictions.  In doing so, we address two matters of first impression.

¶ 2     First, we conclude that the plain language of section 18-7-206, C.R.S. 2020, makes pimping a continuing offense.  Thus, we affirm defendant's conviction for pimping for acts that occurred both within and outside of the statute of limitations.

¶ 3     Second, we conclude that the unit of prosecution for pimping is defined by section 18-7-206 as per person — that is, an individual who is supported by funds derived from another's prostitution may be prosecuted based on the number of prostitutes that the pimp receives money or other things of value from.  We therefore affirm defendant's multiple convictions for attempted pimping because the evidence in support of his convictions was based on attempts to pimp two separate individuals.

¶ 4     We also reject defendant's evidentiary contention.

## I. Background

¶ 5    According to the prosecution's evidence, defendant recruited E.W. to work for him as a prostitute in 2015. After E.W. "tr[ied] out" by having sex with him, defendant arranged for clients to meet with E.W. Defendant and E.W. agreed that he would receive 21% of the proceeds of E.W.'s work. E.W. ultimately saw four clients over the course of two weeks and made $550, although she never gave any of the money to defendant.

¶ 6    S.T., a prostitute who had previously worked for defendant in 2013, contacted defendant to arrange a "threesome." Unbeknownst to defendant, S.T. was working for the FBI as a confidential informant. Defendant sent E.W. to join S.T. for the "threesome," which turned out to be a sting. After E.W. was arrested, she informed police that she was supposed to meet with defendant to pay him the 21% of her proceeds that she owed him.

¶ 7    At the same time as the sting, defendant went to meet A.W., another girl he recruited to work for him as a prostitute — also for 21% of the proceeds. A.W., however, was a false persona created by law enforcement. Defendant was arrested at the same time as the sting set up to catch E.W.

¶ 8     The prosecution charged defendant with two counts of attempted pimping (one each for E.W. and A.W.), and one count of pimping (S.T.).  On a motion by defense counsel, the court severed trial for the pimping count from the attempted pimping counts. After the trial on the attempted pimping charges, a jury convicted defendant of two counts of attempted pimping, and two counts of the lesser nonincluded offense of solicitation.  After the trial on the pimping charge, a jury convicted defendant of one count of pimping and the lesser nonincluded offense of pandering.

¶ 9     The trial court sentenced defendant to eight years in prison for each of the attempted pimping counts, to be served concurrently; ten years in prison for the pimping charge, to be served consecutively; and six months in jail, time served, for all of the lesser nonincluded offenses.

## II.    Analysis

¶ 10    On appeal, defendant contends that (1) pimping is not a continuing offense, and therefore the trial court lacked jurisdiction as to the pimping charge and conviction because the alleged date range fell outside of the statute of limitations; (2) in the alternative, if pimping is a continuing offense, defendant's convictions for

3

attempted pimping were multiplicitous in violation of double jeopardy; and (3) the trial court erred by admitting expert testimony. We consider and reject each of these contentions.

### A. Pimping is a Continuing Offense

#### 1. Standard of Review and Applicable Law

¶ 11 Determining whether an offense is continuing is a matter of statutory interpretation, which we review de novo. *Allman v. People*, 2019 CO 78, ¶ 10.

¶ 12 "When the legislature creates an offense, that offense is deemed committed once all the substantive elements set forth by the legislature are satisfied." *Id.* at ¶ 11. "'However, in certain circumstances, a crime continues beyond the first moment when all its substantive elements are satisfied,' and it is deemed a continuing offense." *Id.* (quoting *People v. Thoro Prods. Co.*, 70 P.3d 1188, 1192 (Colo. 2003)). A continuing offense "continues (and the statute of limitations does not begin to run) so long as the illegal conduct continues." *Thoro Prods. Co.*, 70 P.3d at 1193; *see also* § 16-5-401(4), C.R.S. 2020 ("When an offense . . . is based on a series of acts performed at different times, the period of limitation

prescribed by this code . . . starts at the time when the last act in the series of acts is committed.").

¶ 13　"A crime is deemed continuous when 'the explicit language of the substantive criminal statute compels such a conclusion,'" or when "the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one." *Allman*, ¶ 12 (alteration in original) (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

### 2.　Additional Facts

¶ 14　In the initial charging documents, the prosecution charged defendant with one completed count of pimping regarding E.W. and two attempt counts — one referencing S.T. and the other referencing A.W.　Each charge alleged that defendant's conduct occurred in 2015.

¶ 15　In April 2016, the prosecution moved to amend and correct the information to state that (1) defendant's conduct with respect to E.W. constituted attempted pimping, rather than a completed offense; and (2) defendant had completed the crime of pimping with respect to S.T. between January and December 2013.

¶ 16    After a jury convicted defendant of pimping, he moved to dismiss the pimping charge as to his conduct related to S.T. because the April 2016 amendment fell outside the three-year statute of limitations by charging acts that occurred in January through March of 2013. The trial court found that the plain language of the pimping statute indicates that pimping is a continuing offense, and therefore, the statute of limitations did not run until December 2016, three years after the last act.

### 3.    Discussion

¶ 17    The pimping statute, section 18-7-206, states:

> Any person who knowingly lives on or is supported or maintained in whole or in part by money or other thing of value earned, received, procured, or realized by any other person through prostitution commits pimping, which is a class 3 felony.

¶ 18    Where, as here, the statute itself does not explicitly state that a crime is a continuing offense, we construe the statute to give effect to the legislature's intent. *Allman*, ¶ 12. To discern the legislature's intent, we first look to the plain language of the statute's text in the context of the statute as a whole. *Id.* at ¶ 13. Where the statute does not specifically define key terms, we look to

6

the plain and ordinary meanings of the words, aided by the dictionary definition(s). *Id.* at ¶ 15; § 2-4-101, C.R.S. 2020.

¶ 19     Here, the plain language of section 18-7-206 defines a criminal act that takes place over time. In particular, the plain and ordinary meaning of the phrase "lives on or is supported or maintained" leads us to this conclusion. The dictionary definitions of "living," "support," and "maintain" each contemplate an ongoing period of time. *See* Black's Law Dictionary 953 (11th ed. 2019) (defining "living" as "[o]ne's source of monetary support or resources"); *id.* at 1481 (defining "support" as "[s]ustenance or maintenance; esp. articles such as food and clothing that allow one to live in the degree of comfort to which one is accustomed."); *id.* at 973 (defining "maintenance" in this context as "[f]inancial support given by one person to another . . ."); *accord* Webster's Third New International Dictionary 1323 (2002) (defining "live" in this context as "to maintain oneself"); *id.* at 1362 (defining "maintenance" as "the act of providing a means of support for someone"); *id.* at 2297 (defining "support" as "to pay the costs of").

¶ 20     Our conclusion today is the same as that of California courts interpreting identical statutory language. *See, e.g., People v. Lewis,*

143 Cal. Rptr. 587, 591 (Ct. App. 1978) ("Reasonable interpretation of the statutory definition [of pimping] leads to but one conclusion [ — ] that the legislative intent was that living or deriving support or maintenance from the earnings of a prostitute . . . is an ongoing continuing offense that occurs over a period of time."); *see also People v. Culuko*, 92 Cal. Rptr. 2d 789, 801 (Ct. App. 2000) ("[t]ypical continuous course of conduct crimes include . . . pimping"); *People v. Dell*, 283 Cal. Rptr. 361, 372 (Ct. App. 1991).

¶ 21     For these reasons, we conclude that pimping under section 18-7-206 is a continuing offense and, therefore, affirm defendant's conviction for pimping because his last act in the series of acts that constituted pimping S.T. fell within the statute of limitations. *See* § 16-5-401(4).

    B.    The Attempted Pimping Convictions Were Not Multiplicitous

¶ 22     Defendant argues that if pimping is a continuing offense, then his convictions for attempted pimping are multiplicitous, resulting in a double jeopardy violation. Again, we disagree.

## 1. Standard of Review and Applicable Law

¶ 23    Whether convictions are multiplicitous and violate double jeopardy are questions of statutory interpretation that we review de novo.  *Allman*, ¶ 12.

¶ 24    The Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit punishing an individual twice for the same offense.  *See* U.S. Const. amend. V; Colo. Const. art. II, § 18.  "Multiplicity" prohibits "the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct" and, therefore, implicates double jeopardy principles.  *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005).

¶ 25    In these circumstances, we apply "a two-prong test for determining the legislatively prescribed unit of prosecution and then applying the legislative prescription to the facts of the case."  *Id.* at 215.  First, we examine the scope of prosecution authorized by the statutory prescription; and second, we examine "all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses."  *Quintano v. People*, 105 P.3d 585,

9

592 (Colo. 2005); *see also Woellhaf*, 105 P.3d at 215; *People v. Williams*, 651 P.2d 899, 902 (Colo. 1982).

2. Discussion

¶ 26    Section 18-2-101(1), C.R.S. 2020, defines criminal attempt:

> A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense.  A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

¶ 27    Once again, the pimping statute states:

> Any person who knowingly lives on or is supported or maintained in whole or in part by money or other thing of value earned, received, procured, or realized by any other person through prostitution commits pimping, which is a class 3 felony.

§ 18-7-206.

¶ 28    Thus, we must first determine what unit of prosecution the legislature intended to punish by proscribing a substantial step toward pimping.  *See Woellhaf*, 105 P.3d at 215.

¶ 29    "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete

10

acts for purposes of prosecuting multiple offenses." *Id.* The legislature determines the allowable unit of prosecution, which, in turn, determines the scope of protection offered by the double jeopardy clause. *Id.* Thus, we look exclusively to the statute to determine the unit of prosecution that the legislature intended. *Id.* In doing so, we again look to the plain and ordinary meaning of the statutory language. *Id.*

¶ 30 Based on the plain language of the pimping statute, we conclude that the legislature intended the unit of prosecution for pimping to be each person from whom a defendant knowingly derives support through acts of prostitution. In this context, "person" is a noun in its singular form, which is defined as "[*a*] human being." Black's Law Dictionary at 137 (emphasis added); *accord* Webster's Third New International Dictionary at 1686 (defining "person" as "an individual human being"). Thus, the phrase "by any other *person*" means that a defendant accused of pimping can be subject to individual charges of pimping per prostitute from whom he is deriving benefit as a result of their prostitution.

11

¶ 31    A view of the legislature's proscription of similar criminal conduct — child pimping — confirms our interpretation of the pimping statute in this regard. *People v. Jones*, 2020 CO 45, ¶ 59 ("One of the aids we may employ is to look to other statutes where the legislature has defined the term at issue, particularly when those statutes should be read in pari materia."). The statute that proscribes pimping of a child, section 18-7-405, C.R.S. 2020, contains nearly identical language to the pimping statute, but in place of "money . . . realized by any other person," the child pimping statute reads "money . . . realized by *a child*." (Emphasis added.) A plain reading of this statute indicates that the unit of prosecution for pimping a child is per child, because "a child" is written in the singular. Therefore, we read "any other person" in the pimping statute as a signal of the legislature's intent to designate one charge per person prostituted. *See Southard v. Miles*, 714 P.2d 891, 898-99 (Colo. 1986) (construing statute by reference to similar phrase in unrelated statute); *see also Martinez v. People*, 69 P.3d 1029, 1033 (Colo. 2003) (statutes concerning the same subject matter must be construed *in pari materia* to ascertain legislative intent and to avoid inconsistencies).

¶ 32    Accordingly, we conclude that the legislature intended that the unit of prosecution for attempted pimping is conduct that constitutes a substantial step toward living on money earned by another *individual* through that individual's prostitution.

¶ 33    Next, in light of this unit of prosecution, it is undisputed that the facts and the manner of the presentation of the evidence at trial supported defendant's separate convictions on two counts of attempted pimping — one for his conduct with respect to E.W. and the other for his conduct with respect to A.W. *See Woellhaf*, 105 P.3d at 215.

¶ 34    Therefore, defendant's two convictions for attempted pimping are not multiplicitous and do not violate double jeopardy.

### C.    The Expert's Testimony Was Proper

¶ 35    Defendant next contends that the district court erred by admitting expert testimony that improperly profiled pimps. We disagree.

### 1.    Standard of Review and Applicable Law

¶ 36    We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002). A trial

13

court abuses its discretion when its ruling is arbitrary, unreasonable, or unfair. *Id.*

¶ 37    Under CRE 702, a trial court may permit a qualified witness to give expert testimony that will help the jury understand the evidence or determine a fact in issue. In determining whether the proposed testimony would be helpful to the jury, the trial court must consider whether the proposed testimony is logically relevant and whether its probative value is substantially outweighed by the danger of unfair prejudice under CRE 403. *Salcedo v. People*, 999 P.2d 833, 838 (Colo. 2000). "In reviewing the court's ruling regarding expert testimony, we afford the evidence the maximum probative value and minimum unfair prejudice." *People v. Conyac*, 2014 COA 8M, ¶ 23.

¶ 38    Courts have generally condemned the use of profiles as substantive evidence of guilt. *See Salcedo*, 999 P.2d at 837-38. "However, the 'profile' label is not helpful in distinguishing admissible from inadmissible expert testimony." *Conyac*, ¶ 26. "Instead, courts focus on the purpose for which the evidence is offered: whether it is improper propensity evidence designed to show the defendant's character, or whether it instead seeks to aid

14

the jury in understanding a pattern of behavior beyond its normal experience." *Id.* In other words, "experts may testify regarding the modus operandi of a certain category of criminals where those criminals' behavior is not ordinarily familiar to the average layperson." *Id.* (quoting *United States v. Long*, 328 F.3d 655, 666 (D.C. Cir. 2003)).

## 2. Additional Facts

¶ 39 The prosecution tendered and, over defense counsel's objection, the trial court qualified Sergeant Daniel Steele as an expert in the areas of commercial sex trafficking, pimping, and prostitution. Steele testified that he had no specific knowledge of the case. In his testimony, Steele discussed the prostitution trade generally and the nature of the relationship between pimps and prostitutes, including

- how the various "levels of employment" in prostitution are separated based on the act or acts that the prostitute is willing to perform;

- the subtle and more overt ways pimps persuade or coerce prostitutes to move up a level;

15

- the items that prostitutes often keep with them for work, such as condoms, lubricant, makeup, a change of clothing, and a cell phone;

- the nature of a pimp's role, including advertising to clients and setting up engagements between clients and prostitutes;

- the details of engagements that pimps arrange with clients, such as location, method of payment, and services;

- how pimps dictate prices; and

- how other individuals, such as a recruiter and a "bottom bitch," can assist pimps with recruitment of new prostitutes and arrange engagements.

### 3. Discussion

¶ 40 Relying on *Salcedo*, 999 P.2d 833, defendant contends that the trial court erred by admitting Steele's expert testimony because it amounted to improper profile evidence, was irrelevant, and was unduly prejudicial.

¶ 41 We have reviewed the record and perceive no abuse of discretion. Steele's testimony was proper modus operandi

testimony that was relevant, as it helped rebut defendant's theory of defense that he was merely pretending to be a pimp to entice women to sleep with him. Indeed, Steele's testimony "alert[ed] [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *United States v. King*, 703 F. Supp. 2d 1063, 1074 (D. Haw. 2010) (quoting *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984)). Moreover, the testimony helped place other witnesses' testimony — namely, S.T.'s and E.W.'s — "into context and provided the jury a means to assess their credibility." *United States v. Brooks*, 610 F.3d 1186, 1195-96 (9th Cir. 2010) (the trial court properly admitted detective's expert testimony on "the business of prostitution and the relationships between pimps and prostitutes"); *see also Conyac*, ¶ 28 ("[W]here defendant denied that he committed any offense, the fact that his modus operandi was consistent with the modus operandi of sex offenders generally made it more likely than not that he committed the offenses at issue.").

¶ 42 We reject defendant's contention that Steele's testimony was improper profile testimony that presented an "undue risk that the jurors would substitute Steele's profile testimony for their own

17

opinion." Steele testified that he was not involved in the investigation of this case and did not opine as to whether defendant was a pimp or had the characteristics of one. *See People v. Ramirez*, 1 P.3d 223, 227 (Colo. App. 1999) (distinguishing between improper profile evidence and permissible modus operandi evidence); *cf. Salcedo*, 999 P.2d at 838 (a witness may not offer an "ill-defined compilation[]" of characteristics common to a certain type of offender and then opine that because the defendant has those characteristics, he is likely to be that type of offender).

¶ 43    Further, we are not persuaded that Steele's testimony was unduly prejudicial under CRE 403. The testimony had significant probative value, as it bore on defendant's theory of defense and the elements of the crimes charged. We discern no record support for defendant's contentions that Steele's testimony "likely inflamed the passions and sympathies of the jurors," was misleading, or invited jurors "to substitute Steele's . . . testimony for their own opinion of whether [defendant] met the legal elements of pimping." In sum, affording the testimony the maximum probative value and the minimum unfair prejudice, as we are required to do, we cannot say the trial court abused its discretion by admitting it. *Conyac*, ¶ 23.

18

### III. Conclusion

¶ 44    The judgment of conviction is affirmed.

JUDGE WELLING and JUDGE BROWN concur.